**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| PLAINTIFFS, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| DEFENDANT. | ) ) ) | |

---

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

---

Pursuant to Federal Rule of Civil Procedure 23(e), a class action settlement must be approved before the case may be dismissed or compromised. There are three steps that must precede a class action settlement. First, the Court must preliminarily approve the settlement. Then the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the Court must determine whether the proposed settlement is fair, reasonable and adequate. *See, Williams v. Vukovich*, 20 F.2d 909, 921 (6th Cir. 1983). In this motion, plaintiff

Martin K. O'Toole and hereby requests that this Court, conditionally and for settlement purposes only, (1) certify a class as defined below (the "Settlement Class"), (2) appoint Class Counsel and a Class Representative; (3) grant preliminary approval to the proposed settlement as described in the Settlement Agreement attached hereto as Exhibit A ("Proposed Settlement"), and (4) order notice to the Settlement Class of the terms of the Proposed Settlement, the rights of Settlement Class members, and the date for hearing on a request for final approval of the Proposed Settlement.

## I.   PRELIMINARY APPROVAL BY THE COURT.

The Plaintiff class, through its representative and counsel, has reached an agreement to settle and compromise all claims on behalf of all putative class members with Pitney Bowes, Inc. ("Pitney Bowes"). It is axiomatic that federal courts look with great favor upon voluntary resolution of litigation through settlement. *See, Armstrong v. Board of School Directors of Milwaukee*, 616 F.2d 305, 312-313 (7th Cir. 1980). Indeed, there is a "strong judicial policy favoring settlement as well as by the realization that compromises the essence of settlement," *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984), and settlements of class actions are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and

preventing lawsuits." *Bennett v. Behring Corp.*, 96 F.R.D. 343 (S.D. Fla. 1982) *aff'd* 737 F.2d 982 (11th Cir. 1984) (quoting *Miller v. Republican National Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).[1]

In deciding whether there is good cause to issue notice to the class and proceed with the fairness hearing, the Court must determine that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval." Manual for Complex Litigation, §30.44 (1985). See also Newberg & Conte, Newberg on Class Actions, §11.24-11.25 3rd Ed. 1992; and *In re Corrugated Container Anti-Trust Litigation*, 643 F.2d 195, 212 (5th Cir. 1981).

---

[1]      *See also, Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) ("there is an overriding public interest in favor of settlement of class action suits.") The Courts have recognized that "class action suits have a well-deserved reputation as being the most complex," and, therefore, compromise is particularly appropriate.   *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).   *In re Domestic Air Transportation Anti-Trust Litigation*, 148 F.R.D. 297, 312 (N.D. Ga. 1993); *In re General Motors Corporation Pickup Truck Fuel Tank Litigation*, 55 F.3d 768, 784 (3rd Cir. 1995).

## II.   THE SETTLEMENT.

The Proposed Settlement, which is set forth more fully in the accompanying Settlement Agreement contains both non-monetary equitable relief and monetary relief.

### A.   Injunctive Relief.

With respect to injunctive relief, the Pitney Bowes compatible ink and toner line of business has agreed to refrain from using facsimile advertising that contains the opt-out language set forth in the donut fax advertisements sent to members of the Settlement Class.

### B.   Monetary Relief.

The settlement between the class representative and the Defendant requires and provides as follows: Pitney Bowes will make available $2,000,000.00 in remediation to the Plaintiff class in the following manner:

Each member of the Settlement Class is entitled to a product certificate ("Product Certificate") for use in purchasing compatible ink and toner from the Pitney Bowes Supply Line for each week during the year 2007 that each unique customer received a fax from Pitney Bowes under its Donut Fax Program (i.e., each member of the Settlement Class will receive one Product Certificate for each week that it received a Donut Fax from Pitney Bowes). Each Product Certificate

will entitle each unique customer to $26.00 off of a $100.00 purchase of compatible ink and toner from Pitney Bowes. More than one Donut Fax sent by Pitney Bowes to recipients at the same unique customer number on the same day will be considered to be one Donut Fax. The Product Certificate may be applied to the costs of compatible toner and ink, shipping, handling, and other related charges.

Each Product Certificate may be used only once. Pitney Bowes may, in its discretion, develop procedures governing the exercise of the Product Certificates including, but not limited to (a) including on the Product Certificates information that Pitney Bowes requires in order to track the dissemination, transfer and use of the Product Certificates; and (b) requiring members of the Settlement Class to redeem the Product Certificates by calling a specified toll-free phone number or ordering at a specified web page. At its option, Pitney Bowes may waive its right to require holders of the Product Certificates to return the certificates to Pitney Bowes upon use of the certificates. Additionally, members of the Settlement Class cannot redeem the Product Certificates for cash.

Along with the Product Certificates, Pitney Bowes will include a web address from which members of the Settlement Class may obtain product information and order products as well as a toll-free number from which members

may order products.  Pitney Bowes may include marketing materials along with Product Certificates.  Pitney Bowes shall begin to mail the Product Certificates to eligible members of the Settlement Class no later than 60 days after the Court's final judgment and order are deemed final.

Product Certificates will be fully transferable in the United States.  Transfer of a Product Certificate will have no effect on the class members' release of claims, as described in the attached Notice.

A Product Certificate may be redeemed for any compatible ink or toner offered for sale by Pitney Bowes, 1625 Williams Drive, Marietta, Georgia 30066. The Product Certificates may not be used for any purpose other than for ordering compatible ink and toner from Pitney Bowes.  The first ten Product Certificates issued to a member of the Settlement Class must be redeemed within the first twelve-month period following the mailing of the certificates.  Additional Product Certificates issued to a member of the Settlement Class will only be redeemable during the following twelve-month period.  Members of the Settlement Class may "stack" Product Certificates by redeeming more than one certificate at a time (e.g., members of the Settlement Class may combine two product certificates for $52.00 off of a $200.00 purchase of compatible ink and/or toner).  Product Certificates

may not be bundled; thus, a member of the Settlement Class may not put two or more certificates together to combine the dollar-off amount on a $100.00 purchase

The expiration date on a Product Certificate shall not be earlier than 12 months after the date that Pitney Bowes places the Product Certificate in the mail. Different Product Certificates may contain different expiration dates as Pitney Bowes may place Product Certificates in the mail at different times. Pitney Bowes will not be obligated to reissue any lost Product Certificates. Failure of a member of the Settlement Class to redeem a Product Certificate that Pitney Bowes has mailed will not require Pitney Bowes to re-issue a Product Certificate, to issue an additional Product Certificate or cash equivalent thereof to any other person or entity, to pay out any monies to any person or entity, or to otherwise expense any other resources as a result of such failure.

In addition to the Product Certificates, the named Plaintiff in this action, Martin K. O'Toole, will receive a payment of $5,000.00 in recognition of his individual time and effort spent on behalf of the class. The parties further agree that reasonable attorneys' fees generated during the course of the litigation against Pitney Bowes shall be paid to Settlement Class Counsel in an amount to be awarded by the Court. Under the terms of the Proposed Settlement, Settlement Class Counsel agrees not to seek attorneys' fees in an aggregate amount greater

than $950,000.00, and Pitney Bowes agrees that it will not oppose any request by Settlement Class Counsel for an award of attorneys' fees up to an amount of $950,000.00.

### III.   FACTORS TO BE CONSIDERED IN DETERMINING WHETHER THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

This Court must determine that the proposed settlement is "fair, adequate and reasonable."   F.R.Civ.P. 23(e)(2); *see also, Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.2d 1072, 1079 (2nd Cir. 1995); *In re Paine Webber Limited Partnerships Litigation*, 171 F.R.D. 104, 124 (S.D. N.Y. 1997).   The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particular sum.   Rather, there is a "range of reasonableness" with respect to a settlement.   *McDonald v. Chicago Milwaukee Corp.*, 464 F.2d 416, 428 (7th Cir. 1977).

Thus, at this stage, where the Court is making its preliminary inquiry into and in review of the proposed settlement before it allows a settlement notice to be sent to the class, it usually will make an initial determination, based on a cursory review of the settlement's terms, that the settlement is presumed to be fair.   See Manual for Complex Litigation, §30.41.

At this preliminary stage, courts typically examine whether (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) proponents of the litigation are experienced in similar litigation; and (4) the number of actual or anticipated objections to the settlement is not large when compared to the class size. Id. See also Moore's Federal Practice, 3rd Ed. §23.85(3). The Eleventh Circuit has provided six key points or factors to be considered by a court in assessing the fairness and adequacy of a proposed class settlement. They are, in no weighted order, as follows:

> (1) The existence of fraud or collusion with the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representative and absent class members.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); See also *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The weight to be given each factor is determined by the facts and legal issues of each case. Each district court has wide discretion assessing the weight and applicability of each factor. The relative importance of each factor will depend on the nature of the claims, the types of relief sought, and the unique facts and circumstances of each case. While the proponents of the settlement have the burden of proving that these factors weigh in favor of approval, it is believed by

examining these factors, the Court will satisfy itself, at this stage, that the proposed settlement is fair, and the parties should be allowed to send notice of its terms to the class members.

The factors enunciated by the Fifth Circuit will now be examined in the order referenced above.

### A.     <u>Existence of fraud or collusion.</u>

The Court can take comfort in knowing that all counsel are very experienced in the handling of complex class actions. Plaintiffs' counsel's experience is the basis for its appointment as class counsel. Additionally, defense counsel has handled substantial class action litigation as well.

Initially, the Plaintiffs and the Defendants attempted settlement pursuant to mandatory mediation in Cobb County. These negotiations ultimately failed. In January of this year, after two days of renewed voluntary Mediation (with the approval of this Court), the Plaintiffs and Pitney Bowes negotiated a resolution. The settlement was negotiated in good faith, professionally, and at all times at arm's length. Indeed, there were two third-party neutrals assisting in the mediation. For these reasons, there is absolutely no evidence of fraud or collusion on the part of the parties or their counsel in reaching the settlement that has been proposed.

**B.**   **Complexity, expense and duration of litigation.**

There is no dispute that this case is procedurally complex, expensive and potentially lengthy. The record in this case is already voluminous and the legal issues are complex. The continued litigation of all issues with respect to the Defendant's liability would be difficult, long, and very expensive for the parties. Represented by highly capable counsel, the Defendants would surely litigate every possible issue with thoroughness and vigor. Even if Martin O'Toole were successful prosecution of the case through trial, the appeals by Pitney Bowes would entail enormous additional effort and expense with no promise of absolute success. This factor supports the approval of the settlement. *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 318 (3rd Cir. 1998).

As provided in this Court's Scheduling Order, the case has been submitted on cross motions for summary judgment with respect to different issues; the case has been submitted on a motion to dismiss filed by the Defendant; and the case has been submitted on the issue of class certification. Certainly an appeal will be taken by the non-prevailing party as to class certification. For these reasons, it is believed that the complexity, expense and duration of future litigation militated in favor of the proposed settlement.

### C.   The stage of the proceedings and amount of discovery completed.

This settlement was reached after substantial discovery had been completed. The parties had a very good understanding of the identity and size of the class, the types of injuries experienced by class members, and the evidence in support of the prosecution and defense on the liability issues when the settlement was confected. The Court need only look at the submissions with regard to class certification issues to determine the parties' understanding of the class.

Additionally, the legal issues in this case with regard to class certification and the merits have been thoroughly briefed and analyzed by both counsel for the Defendant and Plaintiff's class counsel. The effort and knowledge of the respective parties' counsel, and the Court's involvement, inspired settlement discussions between the parties.

### D.   Probability of plaintiff's success on the merits.

This is a difficult case for both parties, and there is considerable evidence to advance both Plaintiff's and Defendant's theories of the case. It is for this reason that settlement was in all parties' best interests, and it is because of the numerous factual and legal issues in dispute that the settlement negotiation was originally put

on hold after the Cobb County mediation and that is resumed after removal to this Court, and after substantial briefing on the merits and class certification issues.

Each party faced problems in this litigation.  The Plaintiff, while being able to demonstrate class-wide distribution of unsolicited facsimile advertisement with non-compliant opt-out notices, nevertheless faced difficulties under Eleventh Circuit superiority analysis.   Moreover, the Defendant faced liability issues concerning the sending of the faxes and whether or not those faxes were permitted based on the existence of established business relationships and whether those faxes were compliant with the federal regulations specifying the contents for the opt-out notice.

**E.**   **Range of possible recovery.**

This factor requires the Court to determine the value of the settlement in light of the potential for recovery.  As more fully set out in paragraph D above, the parties went through great lengths to determine the settlement value of this case by valuating the strength of each claimant's claims.

Nonetheless, there is still much negotiation between the parties as there was still disagreement between counsel on the estimated range of damages.  Further, lengthy settlement discussions and negotiations occurred, after which a reasonable and contemplated agreement was reached as evidenced by the proposed settlement

before this Court.   Additionally, these negotiations were assisted by the capable third-party neutrals, Frank Lowrey. Esq. and Richard Sinkfield, Esq.

**F.**   **Opinions of class counsel, class representatives and class members.**

The Plaintiffs state, without hesitation, that it is their good faith belief that the proposed settlement is fair and equitable to the class.   Further, the Plaintiffs would expect that after a full opportunity is given to object to the terms of the proposed settlement there will be minimal, if any, objection to its proposed terms and monetary amount by those bound by the settlement.   It is anticipated that any class member whose claim would be excluded by the claims process will receive notice of such determination and given a timely opportunity to be heard by this Court.  The opinion of competent and experienced counsel as to the reasonableness of the settlement is an important consideration for the Court in its evaluation.  *In re Domestic Air Transportation Anti-Trust Litigation*, 148 F.R.D. at 312.   In fact, when a proposed settlement is the result of arms length negotiations by capable counsel, the settlement is presumed to be fair and reasonable.   See Newberg on Class Actions, §11.41 at 11-88 (3rd Ed. 1992); *In re Nasdaq Marketmakers Anti-Trust Litigation*, 187 F.R.D. 464, 474 (S.D. N.Y. 1998).

## IV.   THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF FED. R. CIV. P. 23.

The Supreme Court has held that the certification of a class, even if only for settlement purposes, must meet the requirements of Fed. R. Civ. P. 23(a) and 23(b), which protect against "unwarranted or overbroad" class definitions. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) Settlement classes can be certified only if all of the requirements for class certification under Rule 23 are met. *Columbus Drywall & Insulation, Inc. v. Masco Corporation*, 2007 U.S. Dist. LEXIS 52589 (N.D. Ga. July 20, 2007).

The parties propose that the Court certify the following Settlement Class:

> All Pitney Bowes customers, natural or otherwise, defined as individuals or entities assigned a customer number, throughout the State of Georgia to whom Pitney Bowes, sent or caused to be sent in 2007, one or more facsimile transmissions with content substantially similar to that contained in any of the attached Exhibits A through H of Mr. O'Toole's Amended Complaint.

> Excluded from the class is any Pitney Bowes agent, employee, or shareholder. Also excluded from the class are all judges of the magistrate, state, or superior courts of the State of Georgia as well as all the judges of the Court of Appeals and justices of the Supreme Court of the State of Georgia.

> Also excluded from the class is anyone who has filed separate litigation against Pitney Bowes for the same conduct alleged in this litigation, unless said individual consents to the consolidation of his case with the instant case.

Also excluded from the class is anyone who has released Pitney Bowes from the same conduct alleged in this litigation.

The proposed settlement in this case meets both the threshold requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).

**A.    The settlement class is so numerous that joinder of its members is impracticable.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. The Settlement Class in this case contains approximately two thousand, six hundred (2,600) members. In these circumstances, the numerosity requirement is easily satisfied. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553(11th Cir. 1986)(generally, more than 40 class members satisfies numerosity).

**B.    Because the Complaint alleges a common course of conduct, common questions of law or fact exist.**

"A common question is 'one which arises from a nucleus of operative facts, regardless of whether the underlying facts fluctuate over a class period and vary as to individual claimants.'" *Anderson v. Garner*, 22 F.Supp.2d 1379, 1385 (N.D. Ga. 1997), quoting *Hill v. Butterworth*, 170 F.R.D. 509, 514 (N.D. Fl. 1997). The rule "does not require that all the questions of law and fact raised by the dispute be common. . . . The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs." *Cox*, 784 F.2d at 1557 (citations omitted).

*See also Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Mr. O'Toole's complaint alleges that Pitney Bowes engaged in a common course of conduct with respect to the unsolicited donut faxes it sends to its customers.   Among the common questions of law and fact presented by these allegations are: (a) whether the Donut Faxes sent by Pitney Bowes to individuals or entities in metropolitan Atlanta that had previously purchased product from it violated the TCPA;  and (b) whether the opt-out language contained on the Donut Faxes violated the TCPA.  Commonality is met here.

### C.    <u>Mr. O'Toole's claims are typical of those of the class.</u>

The typicality requirement of Rule 23(a)(2) asks whether the claims of the named plaintiffs arise from the same practice or course of conduct giving rise to the claims of other class members, and whether such claims are based upon the same legal theories. *Appleyard*, 754 F.2d at 958.

Mr. O'Toole's alleged claims arise from the same pattern or practice (the faxing of allegedly unsolicited fax advertisements containing virtually identical material), and are based upon the same legal theories (violation of the TCPA) as the claims of the Settlement Class.  Mr. O'Toole's claims are common among all members of the Settlement Class.  Mr. O'Toole and the other members of the Settlement Class seek to recover damages for their losses caused by Pitney Bowes'

alleged common course of conduct.  Accordingly, Mr. O'Toole's claims are typical of the claims of the other members of the Settlement Class.

### D.  Plaintiff and his counsel will fairly and adequately represent the settlement class.

Rule 23(a)(4) directs that representative plaintiffs must "fairly and adequately protect the interests of the class."  The rule requires consideration of two factors: (1) whether any potential conflicts may exist between the named plaintiff and the class, and (2) whether the named plaintiff and her counsel will prosecute the case vigorously.  *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985);  *See also Newberg on Class Actions 3d*, § 3.22.

Both factors for adequacy of representation are satisfied here.  First, the claims advanced by Mr. O'Toole arise from the same facts, and invoke the same legal theories, as the claims of the other members of the Settlement Class.  *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (commonality and typicality requirements "tend to merge with the adequacy of representation requirement").   Mr. O'Toole, like the other members of the Settlement Class, claims to have been harmed by Pitney Bowes' alleged unsolicited faxes and has an interest in establishing Pitney Bowes' legal liability for such harm.  Accordingly, he has every incentive to pursue vigorously these claims as representative of the class.  *See In re Corrugated Container Antitrust*

*Litigation*, 643 F.2d 195, 208 (5th Cir. 1981)("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

With respect to class counsel, Fed. R. Civ. P. 23(g), provides that class counsel must "fairly and adequately represent the interests of the class." The following non-exhaustive list of criteria must be considered by the Court in determining who to appoint as class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and, (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i).

Class counsel Samuel Hill and Henry Turner have expended significant time and expense in investigating and litigating this matter. They are both experienced in matters arising under the TCPA and are committed to utilizing the resources necessary to fairly and adequately represent the class.

E.   **A class action is superior to other available methods for resolving this controversy.**

In addition to the requirement that common questions of law or fact predominate over questions affecting only individual members, Rule 23(b)(3)

provides that a class action may be maintained if the Court finds that a class action is "superior to other methods for the fair and efficient resolution of the controversy." The Rule lists four non-exclusive factors to be considered in this analysis:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

> Fed. R. Civ. P. 23(b)(3).

Nothing about this case or the Proposed Settlement suggests that individual class members would prefer individual control of this litigation. None of the putative class members received an extraordinary number of allegedly improper faxes, and therefore amount of statutory damages at stake do not suggest a strong interest in individual control. Pursuit of individual claims is not likely to be economically practical. However, if certain class members do prefer to litigate on an individual basis, the Proposed Settlement provides the opportunity to opt out of the Settlement Class.

With respect to the second factor in the superiority analysis, the extent and nature of litigation concerning this controversy, the Parties are unaware of any other similar claim filed by a member of the Settlement Class.

Finally, in light of the discovery conducted to date and the arm's length negotiation of the Proposed Settlement, the desirability of concentrating the litigation of claims against Pitney Bowes in this forum is evident.  Resolution of the class member's claims in a single forum is superior to the filing of innumerable individual lawsuits. Settlement would provide class members with the most efficient manner to obtain relief. Class treatment in this case is superior.

### V.    MR. O'TOOLE RESPECTFULLY SUBMITS THAT THIS COURT SHOULD PERMIT THE PARTIES TO DISSEMINATE NOTICE TO ABSENT CLASS MEMBERS.

Notice to absent class members should issue "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies[.]" *Manual for Complex Litigation 3d* § 30.41.  As shown above, the Proposed Settlement is fair and reasonable.   Once preliminary approval is granted, the next step of the process involves notice of a hearing to class members.  Fed. R. Civ. P. 23(c) requires that notice to class members "concisely and clearly state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified: (iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). These notice requirements are designed to "protect[] parties from being bound to judgment without having authorized the class representative to act on their behalf." *In re Armored Car Antitrust Litigation*, 645 F.2d 488, 492 (5th Cir. 1981). The notice must be the most practicable under the circumstances and "reasonably calculated to reach interested parties and apprise them of the pendency of the action." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 335 (N.D. Ga. 1993).

Mr. O'Toole respectfully submits that the form of notice attached hereto satisfies the requirements of Rule 23(c)(2)(B) and Rule 23(e) and requests that this Court allow the parties to disseminate the Notice to the members of the Settlement Class.

## CONCLUSION

The Plaintiffs move this Court for an order:

(a)     Preliminarily approving the Settlement Agreement;

(b)     Preliminarily certifying the Settlement Class;

(c)     Approving the proposed Notice and directing its mailing to members of the Settlement Class as provided in the Settlement Agreement;

(d)     Finding that the method and manner of providing notice will fully and adequately advise the members of the Settlement Class of their rights and obligations under the Settlement Agreement; and

(e)     Scheduling a hearing to determine the reasonableness, adequacy and fairness of the Settlement Agreement pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted this the _17th_ day of April, 2009.

/s/ Samuel M. Hill
SAMUEL M. HILL, Attorney for Plaintiff,
*pro hac vice*

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
e-mail: sam@hillturner.com

/s/ Henry A. Turner
HENRY A. TURNER, Attorney for Plaintiff
Georgia Bar No.: 719310


OF COUNSEL
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Phone:  (404) 261-7787
Fax: (404) 377-1053
e-mail: haturner@prodigy.net

**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) | |
| PLAINTIFFS, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| DEFENDANT. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the within and foregoing <u>Plaintiff's Motion for Preliminary Approval of Class Settlement</u> in the above-captioned case with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

**Jennifer A. Adler**  jaadler@rkmc.com

**Marla R. Butler**  mrbutler@rkmc.com

**Lisa L. Heller**  llheller@rkmc.com, dklee@rkmc.com

**Meredith Hudmon Ragains**  mhragains@rkmc.com,  sscost@rkmc.com

**Henry A. Turner**  haturner@prodigy.net

This ⟨17th⟩ day of April, 2009.

/s/ Samuel M. Hill
SAMUEL M. HILL, Attorney for Plaintiff,
*pro hac vice*

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
 e-mail: sam@hillturner.com

# THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) | |
| PLAINTIFFS, | ) ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | |
| DEFENDANT. | ) ) | |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing Plaintiff's Motion for Preliminary Approval of Class Settlement in the above-captioned case has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

This ___17th___ day of April, 2009.


/s/ Samuel M. Hill
SAMUEL M. HILL, Attorney for Plaintiff,
*pro hac vice*

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
e-mail: sam@hillturner.com