## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARTIN O'TOOLE, individually
and on behalf of all others similarly
situated,

      Plaintiffs,

v.

PITNEY BOWES, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION FILE NO.

1:08-cv-01645-RLV

**CLASS ACTION**

## BRIEF IN SUPPORT OF APPLICATION FOR
## ATTORNEYS' FEE AWARD

Class Counsel, in support of their application for an attorneys' fee award in this cause, show as follows:

## I.   ATTORNEY FEE AWARDS IN CLASS ACTIONS

Courts overseeing class action litigation have a duty to ensure that claims for attorneys' fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing the duty of federal courts to ensure reasonableness of claims for attorneys fees); *Swedish Hosp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). The fact that the fee request is unopposed does not obviate the need for the Court to assess the reasonableness of the fee request. *See In re Cendant Corp. Prides*

1

*Litig.*, 243 F.3d 722, 730 (3d Cir. 2001) (stating that the duty of a court to ensure that fees are proper "exists independently of any objection"). "Special problems exist in assessing the reasonableness of fees in a class action suit since class members with low individual stakes in the outcome often do not file objections, and the defendant who contributed to the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Swedish Hosp.*, 1 F.3d at 1265.

A court's award of attorneys' fees is reviewed for abuse of discretion. *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991). The court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning so that we can undertake our review." *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184 (11th Cir. 1993) (internal quotation omitted).

> By definition. . . under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call.  That is how an abuse of discretion standard differs from a de novo standard of review.  As we have stated previously, the abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.

*Purcell v. BankAtlantic Fin. Corp.*, 85 F.2d 1508, 1513 (11th Cir. 1996) (citation omitted).

### A.    Methods Used by Courts to Assess the Reasonableness of Attorneys' Fees.

Courts generally utilize one of two approaches to assess the reasonableness of requests for attorneys' fees. The approach utilized is often contingent upon whether the case is a statutory fee shifting case or a common fund case. In statutory fee shifting cases, courts frequently employ the lodestar method. In common fund cases, courts typically apply the percentage method.

### 1.    The Lodestar Method.

In assessing the reasonableness of fees within the context of a fee shifting statute, courts generally apply the lodestar method. Under this method, a court first determines the hours reasonably expended by counsel. *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force* (Arthur F. Miller, Reporter), reprinted in 108 F.R.D. 237, 243 (1985). The court next multiplies the number of compensable hours by a reasonable hourly rate. *Id*. This computation yields the "lodestar." Next, the lodestar may be increased or decreased by a "multiplier" based upon consideration of the risks or contingencies of the particular case, as well as the quality of the attorneys' work. *Id*. "The lodestar method. . . is designed to reward counsel for undertaking socially beneficial litigation in cases where the

3

expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. N.J. 1998). Opponents of this method argue that the lodestar approach induces counsel to prolong litigation, engage in unnecessary work, and agree to less than optimal settlements. *See In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 76 (S.D.N.Y. 2000).

Factors considered in determining the appropriate "multiplier" to be used in this matter include the socially beneficial nature of the litigation; the risk of nonpayment borne by class counsel in undertaking and prosecuting this matter; the extreme risk that plaintiffs' counsel may not prevail in this matter; the novelty and difficulty of the legal and scientific questions presented; the preclusion of other employment by class counsel in light of the time consuming nature of the motion practice taken by defendant prior to severance; and defendant's agreement to pay a specified fee above and beyond the considerable benefits and compensation provided to the class.

While Class Counsel have expended hundreds of hours each in the prosecution of this matter, the simple number of hours expended multiplied by some hourly rate does not adequately reflect the actual, legitimate value of the time

4

expended.  With this in mind, Counsel submit that the quality of the time spent yields a value greater than any hypothetical multiple of time which might be spent on inefficient efforts typically employed to increase the lodestar by Counsel in some class actions.   As noted by Professor Hornstein "Where success is a condition precedent to compensation, 'hours of time expended' is a nebulous, highly variable standard, of limited significance.  One thousand hours may be far less productive than one imaginative, brilliant hour."  *Edleman & Combs v. Law*, 633 So. 2d 957 (Ala. 1995) (quoting excerpt of *Legal Therapeutics: "Salvage" Factor in Counsel Fee Awards*, 69 Harv.L.Rev. 658, 660 (1956).

An enhancement multiplier of three is easily justified in this cause.

## 2.      Percentage of Recovery Method.

While the lodestar method is firmly entrenched in statutory fee shifting cases, courts generally favor the percentage of the recovery method whenever a common fund is obtained for class members.   *See., e.g., Friedrich v. Fidelity National Bank*, 545 S.E. 2d 107, 247 Ga. App. 704 (2001), (relying on *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So. 2d 186 (Ala. 2000).

As stated by the United States Supreme Court, the criteria for application of the common fund doctrine are satisfied when "each member of a certified class has

5

an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). In *Boeing*, the Supreme Court rejected petitioner's argument that the attorneys' fee award could only be based on the portion of the common fund actually claimed by class members and not from an unclaimed portion of the fund. *See Boeing*, 444 U.S. at 477. The Court found that "to claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id*. at 480 (emphasis added).

Generally, courts are not required to consider only the actual payout to class members when issuing its award of attorney fees to class counsel and, in fact, the Eleventh Circuit Court of Appeals allowed an attorney fee award of $13,333,333.00 even though the estimated actual payment to class members was $6,485,362.15. *Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999). Moreover, in *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (*per curiam*), a revisionary common fund class action case, the Appellate Court held that the trial court "abused its discretion by

6

basing the fee on the class members' claims against the fund rather than a percentage of the entire fund. . . ."   Even though the actual payout to class members only totaled approximately, $10,000.00, the Ninth Circuit found that the attorneys' fee award should have been based upon a reasonable percentage of the total $4.5 million recovery fund, reasoning that "Defendants here knew, because it was in the settlement agreement, that the class attorneys would seek to recover fees based on the entire $4.5 million fund.  The Defendants had some responsibility to negotiate at the outset for a smaller settlement fund if they wished to limit the fees." *Id.*

> In short,
>
> When a lump sum has been recovered for a class, that sum represents the common fund benchmark on which a reasonable fee will be based. When, however, the defendant reserves the right to recapture any unclaimed portion of the common fund after class members have had an opportunity to make their claims against the fund,...the question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or that amount potentially available to be claimed.   In Boeing Co. v. Van Gemert, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.

Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* §14.03, at 14-14 (3d 3d. 1992).

The Court's endorsement of the percentage of the fund method is "because it directly aligns the interests of the class and its counsel for the efficient prosecution and early resolution of litigation, which clearly benefits both the litigants and the judicial system." *In re Am. Bank Note Holographic Inc. Sec. Litig.*, 127 F. Supp.2d 418, 431-32 (S.D.N.Y. 2001).

The Eleventh Circuit has held that attorney fees awards in common fund cases must "be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Assoc., Inc.  v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  The *Camden* Court noted that common fund fee awards should, typically, fall between 20% to 30% of the fund.  *Id.* at 775; *see, also, Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186 (Ala. 2000).

The *Camden* Court also articulated various factors which may be used in determining the proper amount of the fee award, including (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of attorneys; (10) the "undesirability" of the

case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

Counsel fees also reflect the degree of experience, competence, and effort necessary to achieve the proposed settlement. In particular, in assessing the quality of representation by plaintiffs' counsel, courts consider not only the quality of plaintiffs' counsel, but the quality of the opposition, as well. *See, e.g., Johnson* 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 641 (M.D. Fla. 1992).

A further consideration in determining attorneys' fees is the risk inherent in a contingent fee arrangement:

> [C]ourts. . . have acknowledged the economic reality that in order to encourage "private attorney general" class actions – lawsuits on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679, 687 (M.D. Ala. 1988). *See also, Dolgow v. Anderson*, 43 F.R.D. 472, 494 (E.D.N.Y. 1968) ("In some areas of the law, society is dependent upon the 'initiative of lawyers. . . for the assertion of rights' and the maintenance of desired standards of conduct.")

9

Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1984); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992).

In evaluating the value of the common fund created, courts generally acknowledge that the value of coupons, credits, and other non-monetary benefits confer substantial value and should be rewarded by adequate attorney fees. *See, e.g., Camden I*, 9465 F.2d at 775 (non-monetary benefits conferred on the class are pertinent to determination of appropriate fee award); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 352 (N.D.Ga. 1993) ("*Camden I* authorizes consideration of any non-monetary benefits provided by the settlement"). In *In re Domestic Air Transportation*, the court rejected an argument that counsel should not receive a cash fee award in a settlement providing coupons to class members. 148 F.R.D. at 354. The court noted this objection "has widespread public appeal but totally ignores the value of the settlement and the financial incentives necessary to induce experienced and well-qualified counsel to take on complex and time-consuming cases for the benefit of the public and for which they may never be paid or even reimbursed for the considerable out-of-pocket expenses." *Id.* at 353. The Court concluded:

10

Furthermore, it is unreasonable to suggest that class counsel who are faced with their own overhead expenses and other costs of doing business, after advancing millions to the class in pursuit of the action, should be relegated to a barter economy where they attempt to pay their employees with certificates. The purpose of awarding fees is to compensation successful attorneys for benefits they have achieved for the class as a result of the attorneys' efforts, for the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney have invested in the case. This purpose cannot be met by an award of fees in the form of certificates.

*Id.; see also In re: Cuisinart Food Processor Antitrust Litigation*, M.D.L. 447 (D. Conn. May 31, 1984) (approving a cash fee award to plaintiffs' counsel when settlement consisted of discount coupons); *New York v. Nintendo of America*, 77 5F.Supp. 676 (S.D.N.Y. 1991) (attorneys received fees of $4.75 million in cash for work on case where settlement consisted of coupons).

## II.   THE ATTORNEY FEE APPLICATION IN THIS MATTER SHOULD BE APPROVED AS FAIR AND REASONABLE.

### OVERVIEW

The request of Class Counsel for an award of fees and expenses payable in an amount totaling $950,000.00 should be approved as fair and reasonable. When analyzed, the common fund doctrine provides that if an attorney's efforts create a common fund for members of a certified class, the counsel is then entitled to recover fees and expenses from the fund. *Camden I*, 946 F.2d 768, 771; *Edelman v. Combs v. Law*, 663 So. 2d 957 (Ala. 1995). Common fund attorney fees are

11

specified as a percentage of the fund and "[t]he majority of common fund fee awards fall between 20% and 30% of the fund. . . ." *Camden I*, 9465 F.2d at 774. The "benchmark" is 25%, and deviations from this percentage should be justified in light of the factors addressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Camden I*, 946 F.2d at 775.

The Class Notice in this cause indicated that Class Counsel will seek a fee of $950,000.00. While it is clear that the financial relief made to the Class is substantial, this amount does not reflect the total value of relief provided to the Class under the proposed settlement. The proposed settlement includes final injunctive relief in the form of cessation of improper facsimile advertising and cessation of improper opt-out notices. Such relief will protect those in the Class and even those outside the present Class, given the somewhat fluid nature of fax advertising.

Class Counsel submit that the prohibitions contemplated by the injunctive relief will prevent the conduct which gave rise to this action. The prohibitions mandated by the proposed settlement will effectively preclude illegal conduct and, should later faxing occur, will provide Defendant's fax recipients with the information necessary to make meaningful decisions regarding the faxes they

12

receive. The ability to calculate the value of injunctive relief is difficult to define as a precise monetary value. If the axiom that knowledge has value contains any grain of truth, then it is clear that the injunctive relief has value.

Based upon the direct financial relief created by the proposed settlement, the requested attorney fees and expenses of $950,000.00 represents an amount less than one-third of the total settlement value. It is also significant that the Defendant is paying the Class Counsel fees. No Class Member's portion of the recovery will be reduced by fees or expenses. When analyzed in the context of the common fund doctrine, the requested fee is appropriate.

Class Counsel believes that in light of the difficulty in obtaining such a large settlement based upon the facts and countervailing applicable precedent, the implicit agreement of the Class, the quality of the work performed on behalf of the Class, and the substantial benefits conferred on the Class, and the substantial time expended, an award of $950,000.00 in fees and expenses is easily warranted.

An award of the fee contemplated by the Settlement Agreement is presumptively reasonable when analyzed by either the lodestar or common fund theories. Class Counsel submit that they are entitled to approval of their fees and expenses requested and pray that this Court approve their request.

13

## A.   Class Counsel Are Entitled To Compensation Based Upon the Benefits Created by the Litigation.

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to reasonable attorneys' fees from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Lloyd's Amer. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *70 (S.D.N.Y. Nov. 26, 2002). The rationale for such awards is that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched . . . ." *Boeing Co.*, 444 U.S. at 478; *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The 'common fund' doctrine is designed to spread the costs of litigation among all the beneficiaries of an identifiable fund over which a court can exercise legitimate control, in effect guarding against the unjust enrichment of passive beneficiaries at the expense of the active beneficiary." *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986).

"In the absence of adequate attorneys' fee awards, many private actions would not be commenced . . . ." *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir. 1973). Substantial fee awards in successful cases, such as the present action, thus encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with, the laws. Moreover, awards of counsel fees help to ensure adequate enforcement of class

14

members' legal rights. "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Eltman v. Grandma Lee's Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).

Such a fee is particularly appropriate here, where the fee is paid directly by the Defendant and no Class Member is taxed with fees or expenses. Pitney Bowes has agreed to pay Class Counsel in addition to the Common Fund set forth in the Settlement Agreement. That Agreement came only after the Class Common Fund was determined.

**B.   The Percentage-of-the-Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Action.**

The Supreme Court has repeatedly held in cases involving the computation of a common fund fee award that it is appropriate for the fee to be determined as a percentage-of-the-fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *see also, Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-

25 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1881). In a percentage fee award, the fee is measured by the benefit conferred upon the class.

Many federal courts of appeal have indicated their preference for the percentage-of-the-fund method over the lodestar method. *See, e.g., In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 431 (S.D.N.Y 2001) ("the trend of the district courts in this Circuit is to use the percentage of the fund approach."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("Courts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998) ("there is strong support for the percentage approach from district courts in this Circuit"); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (applying the percentage-of-the-fund method as the better method for determining attorneys' fees in a securities class action); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 U.S. Dist. LEXIS 12702, at *18 (S.D.N.Y. Aug. 24, 1992) (courts increasingly use the percentage basis over the lodestar approach in awarding attorneys' fees). In selecting the percentage-of-the-fund method in awarding attorneys' fees in *In re Lloyd's American Trust Fund Litigation*, Judge Sweet recognized:

16

> The percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system . . . . Further, the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model[.]

2002 U.S. Dist. LEXIS 22663, at *74-75.

The recent trend is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery. *See* DAVID F. HERR, MANUAL FOR COMPLEX LITIGATION § 24.12 (Third, 2003) ("In recent years, the trend has been toward the percentage of the fund method."). In addition to the Second Circuit, at least eight other circuits – the First, Third, Sixth, Seventh, Ninth, Tenth, Eleventh, and District of Columbia – have accepted the percentage-of-fund method as an appropriate method for awarding attorneys' fees.[1]

---

[1] *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) ("[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) (noting "the recent trend toward adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common fund cases); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-5 (11th Cir. 1991) (percentage method

17

For these reasons, the percentage-of-the-fund method should be applied here.

### C.   The Requested Fee Award is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class.

#### 1.   The Award is Within the Normal Range of Awards.

Fee awards in common fund cases typically range from fifteen to fifty percent of the settlement fund. *See Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding fees of 33 1/3% of settlement fund valued at $11.5 million in a settlement reached prior to depositions); *In re Lloyds Amer. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *75-76 (awarding fees of 28% of settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. at 326-27 (awarding $14.2 million in fees or 33.8% of a $42 million settlement fund). In fact, the requested fee award (which is not paid by the Class

---

mandatory in common fund cases); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products* Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) ("[i]n common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered," and in prior cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases").

Members) taken as a whole, amounts to approximately thirty-one percent (31%) of the Settlement.    Such amount falls below awards by other federal courts in complex cases such as this. *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 363-64 (7th Cir. 1998) (affirming award of 38% of class action settlement fund); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement fund); *In re Lorazepam & Clorazepate Antitrust Litig.*, Case No. MDL 1290, Misc. No. 99-276, 2003 U.S. Dist. LEXIS 12293, *6-8 (D.D.C. June 16, 2003) (awarding class counsel 30% of the common fund); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 370 (awarding fees of 33 1/3% of $11.5 million settlement fund); *In re Vitamins Antitrust Litig.*, No. 99-197, (TFH) MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *19 (D.D.C. July 13, 2001) (determining that the one-third award was reasonable and granting class counsel fee petition in the amount of $123,188,032.00 plus interest, or approximately 34% of the total estimated settlement amount, in antitrust price fixing litigation); *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *7 (N.D. Ill. June 9, 2000) (awarding fees of 33 1/3% in class action antitrust suit); *In re Medical X-Ray Film Antitrust Litig.*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at*20 (E.D.N.Y. Aug. 7, 1998) (awarding 33-1/3% of a total settlement fund amounting to $39,360,000); *Maywalt v. Parker & Parsley*

19

*Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (awarding 33.4% of common fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. at 326-27 (E.D.N.Y. 1993) (awarding $14.2 million in fees or 33.8% of a $42 million settlement fund).

In light of the higher percentages often awarded in common fund cases, the fees and expenses requested by Class Counsel here are well within the acceptable range of reasonable attorneys' fees recoverable in common fund cases.

### 2. The Requested Fee is Below the Market Rate in Other Complex, Contingent Litigation.

The requested fee is commensurate with the market rate in other complex, contingent litigation. As Judge Posner observed in matter of *Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), the objective of awarding a reasonable attorneys' fee "is to stimulate the market . . . . The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis." *Id.* at 572; *see also In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *In re Lloyds Amer. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *74-75.

Thus, in determining what constitutes a reasonable percentage, courts have taken into consideration what percentage might have been negotiated as a private contingent fee arrangement. As one court explained:

20

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases . . . . [C]lass counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.

*In re RJR Nabisco Inc. Sec. Litig.,* 1992 U.S. Dist. LEXIS 12702, at \*20 (*quoting*

*Continental Illinois,* 962 F.2d at 572).

If this were non-class litigation, the customary contingent fee would likely range between thirty to forty percent of the recovery. *See, e.g., Kirchoff v. Flynn,* 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting with approval a contract providing for a one-third contingent fee if case settled prior to trial); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at \*40-41 (N.D. Ill. Sept. 14, 1984) (noting that in contingency fee cases the percentages awarded vary greatly but are typically one-third of the recovery).

### D.   Application of the Reasonableness Factors Supports Class Counsel's Requested Fee.

Here, the fee award is fair and reasonable in light of the time and labor expended by Class Counsel, the complexities of this litigation, the substantial risks borne by Class Counsel in litigating this case on a contingency fee basis, the quality of the representation provided, the fee request in relation to the settlement,

public policy considerations, and the reaction of the Class to the settlement. *See Goldberger*, 209 F.3d at 50 (setting forth the factors for the Court to consider in determining a reasonable fee award).[2]

### 1.     The Time and Labor Expended by Counsel.

Class Counsel have been investigating and litigating this case intensely and thoroughly over a period of several years.  Between Class Counsel, thousands of hours have been devoted to investigating the claims, conducting discovery, and engaging in motion practice in the state and federal courts in Georgia.  Indeed, the case was mediated early in state court prior to removal to this Court.  After substantial discovery, the Defendant's Motion to Dismiss, the Plaintiff's Motion to Certify a Class, and Cross Motions for Summary Judgment were filed with this Court.  After the Motions were pled, the parties entered into voluntary Mediation with Richard Sinkfield, Esq. and Frank Lowrey, Esq. jointly conducting the Mediation. After almost two (2) days of intense negotiations, a settlement was reached on January 11, 2009.  The parties worked until April 24, 2009 to secure this Court's preliminary approval.  As the Court is aware, "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation." *In re*

---

[2] *See also, Camden I*, 946 F.2d at 772, n.3, setting forth the 12 factors originally adopted by the old Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).  Those 12 factors are largely included and replicated in *Goldberger* and here.

*Aetna Inc. Sec. Litig.*, No. Civ. A. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001). Indeed, Defendants vigorously dispute that they engaged in any wrongful conduct or violations of the law.

As detailed in the attached Counsel affidavits, Class Counsel devoted hundreds of hours to analyzing documents, preparing and taking discovery, crafting briefs, and negotiating. Moreover, Class Counsel expended a considerable amount of time and effort in coordinating various litigation and settlement strategies. These "efforts in posturing this case for trial . . . played a role in spurring the settlement, [and] produced a substantial payout to the class." *In re Newbridge Networks Sec. Litig.*, CA No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238, at *11 (D.D.C. Oct. 22, 1998).

Moreover, the significant investment of time required by this action necessarily precluded Class Counsel from working on other matters. As reflected in the attached affidavits of Class Counsel, in total Class Counsel expended hundreds of hours in prosecuting this case, and were prepared to put at risk considerable more time and money had the litigation not settled.

The fee award requested by Class Counsel is reasonable in light of the risk, quality and quantity of work expended by Class Counsel over the past two years.

## 2.    The Magnitude and Complexities of the Litigation.

Class actions are arguably the most complex actions to prosecute because the legal and factual issues are inherently complicated and uncertain in outcome. This case is no different.   In fact, in addition to the legal issues involved in overcoming Defendant's motions to dismiss, this case involves highly technical and complex issues.   As the Court is aware, the claims here arise under the Telephone Consumer Protection Act ("TCPA"), a unique federal statute that Class Counsel have devoted years to studying and learning.   That still played a part in securing millions of dollars in relief for the Class.

The success of Class Counsel's efforts is reflected by the size of the settlement obtained, despite the numerous defenses vigorously asserted by a Fortune 500 Defendant with very substantial resources, both legal and financial, at its disposal.   As described in the affidavits, the complexity of the issues involved in Class Counsel's prosecution of this litigation supports the award requested.

## 3.    The Complexity and Risks of the Litigation and the Delay in Payment.

A determination of a fair fee must include consideration of the sometimes undesirable characteristics of a contingent action, including the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by plaintiffs'

24

counsel and the fact that the risks of failure and nonpayment in a contingent case are extremely high. Many cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award. *Goldberger*, 209 F.3d at 54 (citation omitted); *see also, Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."). In *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the Court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . . A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* (citations omitted). As Judge Nimmons similarly explained in *Ressler v. Jacobson*:

> The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award . . . . In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.

149 F.R.D. 651, 656-57 (M.D. Fla. 1992) (citations omitted).

The present case is no exception to the rule.  When Class Counsel undertook the representation of the Class, there were no assurances that any fees would be received.  Class Counsel were aware that they would likely have to expend untold hours and dollars in prosecuting this case over an extended period of time before having even a possibility of recovering a fee.  Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal.

To date, Class Counsel have received no compensation during the course of this multi-year investigation and litigation, yet have spent hundreds of hours in prosecuting this case.  The complex nature of this case, including the technical legal, regulatory, and financial defenses asserted by Defendant, the risk involved in succeeding at trial and on appeal on liability, causation and damages, along with the enormous financial risks and outlays incurred by Class Counsel to date in this contingency matter, all support the fee requested.

### 4.     The Quality of Class Counsel's Representation Supports the Requested Fee Award.

The experience, reputation and ability of plaintiff's counsel is a key factor in a court's consideration of counsel's fee request. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 n.3 (10th Cir. 1995); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), and *Camden I*, 946 F.2d at 772.

The Settlement Fund was not created through fortuity, nor was it easily achieved. Defendant is represented by some of the country's most experienced and able counsel. The settlement negotiations were hard-fought and protracted. Indeed, the settlement was only achieved as a result of the work of two mediators working together, one an expert in TCPA law, the other one of the preeminent mediators in the Southeast. After careful consideration and deliberation among Class Counsel, along with discussions with the Defendant, the initial settlement offerings were rejected as inadequate. As a result of the persistence of Class Counsel, their negotiating skill and experience, and their willingness to take this case to trial, Defendant substantially improved their settlement offer.

The results obtained for the Class through this litigation were excellent.

## THE PROVISIONS OF THE SETTLEMENT AGREEMENT

The Agreement of the Compromise and Settlement provides, among other things, that:

27

Each member of the Settlement Class is entitled to a product certificate ("Product Certificate") for use in purchasing compatible ink and toner from the Pitney Bowes Supply Line for each week during the year 2007 that each unique customer received a fax from Pitney Bowes under its Donut Fax Program (i.e., each member of the Settlement Class will receive one Product Certificate for each week that it received a Donut Fax from Pitney Bowes). Each Product Certificate will entitle each unique customer to $26.00 off of a $100.00 purchase of compatible ink and toner from Pitney Bowes. More than one Donut Fax sent by Pitney Bowes to recipients at the same unique customer number on the same day will be considered to be one Donut Fax. The Product Certificates may be applied to the costs of compatible toner and ink, shipping, handling and other related charges.

Each Product Certificate may be used only once. Pitney Bowes may, in its discretion, develop procedures governing the exercise of the Product Certificates including, but not limited to (a) including on the Product Certificates information that Pitney Bowes requires in order to track the dissemination, transfer and use of the Product Certificates; and (b) requiring members of the Settlement Class to redeem the Product Certificates by calling a specified toll-free phone number or ordering at a specific web page. At its option, Pitney Bowes may waive its right to require holders of the Product Certificates to return the certificates to Pitney Bowes upon use of the certificates. Additionally, members of the Settlement Class cannot redeem the Product Certificates for cash.

Along with the Product Certificates, Pitney Bowes will include a web address from which members of the Settlement Class may obtain product information and order products as well as a toll-free number from which members may order products. Pitney Bowes may include marketing materials along with Product Certificates. Pitney Bowes shall begin to mail the product certificates to eligible members of the Settlement Class no later than 45 days after the Court's final judgment and order are deemed final.

Product Certificates will be fully transferable in the United States. Transfer of a Product Certificate will have no effect on your release of claims, as described in Paragraph 9 of this Notice.

A Product Certificate may be redeemed for any compatible ink or toner offered for sale by Pitney Bowes, 1625 William Drive, Marietta, Georgia 30066. The Product Certificates may not be used for any purpose other than for ordering compatible ink and toner from Pitney Bowes. The first ten Product Certificates issued to a member of the Settlement Class must be redeemed within the first twelve-month period following the mailing of the certificates. Additional Product Certificates issued to a member of the Settlement Class will only be redeemable during the following twelve-month period. Members of the Settlement Class may "stack" product certificates by redeeming more than one certificate at a time (e.g., members of the Settlement Class may combine two product certificates for $52.00 off of a $200.00 purchase of compatible ink and/or toner). Product Certificates may not be bundled; thus, a member of the Settlement Class may not put two or more certificates together to combine the dollar-off amount on a $100.00 purchase.

The expiration date on a Product Certificate shall not be earlier than 12 months after the date that Pitney Bowes places the Product Certificate in the mail. Different Product Certificates may contain different expiration dates as Pitney Bowes may place Product Certificates in the mail at different times. Pitney Bowes will not be obligated to reissue any lost Product Certificates. Failure of a member of the Settlement Class to redeem a Product Certificate that Pitney Bowes has mailed will not require Pitney Bowes to re-issue a Product Certificate, to issue an additional Product Certificate or cash equivalent thereof to any other person or entity, to pay out any monies to any person or entity, or to otherwise expend any other resources as a result of such failure.

This settlement was reached by Class Counsel who include some of the most experienced firms in the country having spent years prosecuting TCPA claims and complex actions. Due to the quality of representation and the significant results achieved by Class Counsel, the requested award is reasonable.

29

### 5.    Public Policy Considerations.

Class Counsel sought to enforce the federal junk fax laws in Georgia to prevent fax advertisers and broadcasters from reaping undeserved profits at the expense of advertising recipients in violation of federal law.  The Supreme Court has long recognized the important role private actions play in ensuring compliance with the laws.  *See Perma Life Mufflers* 392 U.S. at 139 (noting the "usefulness of the private action as a bulwark of anti-trust enforcement"); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972) (stating Congress' intent that citizens act as "private attorneys general" against antitrust violations); *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 238 (E.D.N.Y. 1998); *Cumberland Farms, Inc. v. Browning-Ferris Indus., Inc.*, 120 F.R.D. 642, 645 (E.D. Pa. 1988).

Additionally, this litigation sends a clear message that fax recipients will not tolerate behavior that violates federal law, shifts the cost of advertising to them, and invades their privacy.  It is hoped that the settlement will deter companies from engaging in similar types of conduct in the future.  The end result will be decreased illegal fax broadcasting of advertisements – something that benefits all fax machine owners.

Further, encouraging qualified counsel to bring highly risky but effective class actions like this one benefits society.  *See In re M.D.C. Holdings Sec. Litig.*, Master File No. CV-89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *30-31

(S.D. Cal. Aug. 30, 1990) ("without able lawyers handling these matters not only do some of them go unprosecuted, but . . . you don't get the highest recovery"). Class Counsel undertook this litigation which involved some very complex issues relating to TCPA law and FCC regulations. Payment of attorneys' fees in the requested amount adequately and fairly compensates Class Counsel for the risk they undertook at the inception of the case and the benefit they have achieved for the Class in settling this litigation.

Class Counsel should be compensated such that they will have an incentive to pursue additional cases similar to this one.

### E. The Reaction of the Class is a Significant Indicator of the Reasonableness of the Requested Fee.

Another important indication of the reasonableness of the fee award is the reaction of the Class. Here, the Plaintiff Class is comprised of fax recipients. The settlement has been thoroughly presented to the Class, including Class Counsel's intended request for fees and expenses. No Settlement Class member has objected to Class Counsel's stated intentions regarding their fee and expense request. By not objecting, the Class members are demonstrating their support for the requested fees and expenses. Indeed, only four members of this Class of thousands have chosen to be excluded.

Class Counsel should be compensated such that they will have an incentive to pursue additional cases similar to this one.

### E.   The Reaction of the Class is a Significant Indicator of the Reasonableness of the Requested Fee.

Another important indication of the reasonableness of the fee award is the reaction of the Class. Here, the Plaintiff Class is comprised of fax recipients. The settlement has been thoroughly presented to the Class, including Class Counsel's intended request for fees and expenses. No Settlement Class member has objected to Class Counsel's stated intentions regarding their fee and expense request. By not objecting, the Class members are demonstrating their support for the requested fees and expenses. Indeed, only four members of this Class of thousands have chosen to be excluded.

## CONCLUSION

Without any guarantee of success, Class Counsel pursued this litigation at their own risk and expense. For the reasons set forth above, Class Counsel respectfully request the Court to approve the fee and expense petition and enter an Order awarding Class Counsel attorneys' fees and expenses in the amount of $950,000.00.

Dated:      July 30, 2009.

31

/s/ Henry A. Turner
HENRY A. TURNER
Attorney for Plaintiff
Georgia State Bar No.: 719310

OF COUNSEL
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue, Suite 207
Decatur, Georgia 30030
Phone:  (404) 261-7787
Fax: (404) 377-1053
e-mail: haturner@prodigy.net

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| Defendant. | ) | |

## <u>AFFIDAVIT OF SAMUEL M. HILL IN SUPPORT OF APPLICATION FOR ATTORNEY FEES</u>

STATE OF ALABAMA)
JEFFERSON COUNTY)

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared Samuel M. Hill, who being known to me and being by me first duly sworn deposes and testifies to the following:

1.    My name is Samuel M. Hill.  I am an attorney at the law firm of Hill Turner, LLC, located in Birmingham, Alabama.  A partial listing of the class actions in which I have participated is attached as Exhibit A for the Court's

1

convenience. This affidavit is made in connection with the above-captioned action. I have personal knowledge of, and am competent to testify to, the facts set out herein.

2. I managed, along with Henry A. Turner, all aspects of the litigation, including devising litigation strategy, attending hearings, coordinating discovery efforts with other counsel, drafting briefs and pleadings, and negotiating the settlement. My role in prosecuting the litigation, along with a discussion of the activities of Mr. Turner, included participating in early Court-ordered mediation in Cobb County Superior Court. That mediation, through the fault of no party, failed. This matter was removed to this Court. Upon removal, a Motion to Dismiss was filed by the Defendant. That Motion was briefed. Then full briefing on class certification issues was undertaken. Finally, after full briefing on cross summary judgment issues, the parties involved Richard Sinkfield and Frank Lowrey as co-mediators. Through their assistance, a resolution was reached.

3. This is a complex matter arising out of claims based on the junk fax Acts – the Telephone Consumer Protection Act ("TCPA"), and the more recent Junk Fax Prevention Act ("JFPA"). These statutes, enacted in 1991 and 2005, respectively, set forth detailed statutory (and regulatory) requirements for the legal

2

and proper use of telephone facsimile advertising.  During the past 10 years I have studied and learned these Acts and their application in the class action context. During the course of this litigation I maintained contemporaneous time and expense records on a computer.  I spent not less than 700 hours prosecuting this litigation.  In my opinion, all of the time that I spent prosecuting the action was reasonable and necessary.  Of course, these hours do not reflect the time committed by co-counsel, Henry A. Turner.

    4.    It is my understanding of the law in Georgia state and federal courts that attorney fees in common fund cases such as this are to be determined as a percentage of the fund.  Accordingly, the number of hours spent by counsel and the appropriate hourly rate to be used are of only limited importance.  To the extent, however, that the time spent and the rates charged for hourly-rate attorneys' fees are relevant for purposes of determining the appropriate percentage fee to be awarded, it is my opinion that:

        a.    The prevailing non-contingent hourly rates currently charged by experienced plaintiff counsel in sophisticated, complex litigation in Birmingham and similar metropolitan areas varies in the range of $200 to

$500 per hour, with many practitioners, especially those engaged in nationwide practices, charging still higher rates.   For practitioners engaged in national practices involving complex litigation, rates customarily are charged which fall in the upper part of the usual range of rates charged by experienced practitioners in more traditional litigation.   I charge $450.00 per hour and this rate is well within the range charged in similarly complex non-contingent cases.

b.     Hourly rates of defense counsel are sometimes lower than those charged by plaintiff counsel, even on a non-contingent basis, because, *inter alia*, defense counsel often represent clients with whom they have, or desire, an ongoing relationship, and therefore adjust rates downward in anticipation of payment for future or additional work, in contrast to plaintiff counsel who usually represent clients on a one-time basis.

5.     From my experience and observation, it is my opinion that counsel with the qualifications and experience necessary to properly handle complex class actions such as this case would not take cases similar to this one without the option of a substantial enhancement being added to the court-awarded attorney fees to compensate such counsel for the considerable risk of prosecuting the case for years on a contingent fee basis and to compensate for the delay in receipt of fees. Practical economics dictate that a law practice based on fees that are contingent and achieving a successful result must be higher than fees based on non-contingent services, which will be payable regardless of the results obtained.  The risks of nonpayment are greatly multiplied (i) in complex class actions, (ii) to small firms such as Class Counsel, and (iii) where, as here, counsel advanced the expenses of litigation.

6.     As a result of these factors, economics of law practice would prevent me from accepting a plaintiff's case on a purely contingent fee basis unless I could feel reasonably sure that the court-awarded fee would compensate me both for accepting the risk of not being paid regularly, if at all, and for the delay in payment.  It is my opinion, formed from my direct experience with clients and others with potential claims involving complex class action litigation, that without

5

such enhancements serving as an incentive to the lawyers who are qualified to handle this sort of case, most persons with small individual claims will not be able to hire competent counsel to represent them in mass tort class actions such as the one at bar.   Without the willingness of lawyers with the degree of skill, competence and creativity necessary to obtain this sort of result, the class members would be without redress.

7.   As demonstrated in the attached Exhibit A, the undersigned has prosecuted many plaintiff cases in many districts on both a class and an individual basis.  In my experience, the usual percentage-based fee in this district in non-class action contingent fee cases ranges from one-third to one-half of any recovery.  All Class Counsel have agreed to seek aggregate fees and expenses of $950,000.00 (less than one-third of the total value of the settlement).  The fee requested here is significantly lower than the fees charged in similar non-class action contingent fee litigation.  I therefore believe the requested fee to be presumptively reasonable in my experience and absolutely necessary to attract competent counsel to pursue this sort of complex litigation in the future.

6

# EXHIBIT A

# RESUME' OF
# HILL TURNER, LLC
### RELATING TO CLASS ACTIONS

Hill Turner, LLC has been in existence since November, 2008. Pending cases attributable to its managing partner, Samuel M. Hill, including numerous class actions in Alabama and across the nation, followed him to the Firm. Cases litigated by the Firm are varied in nature ranging from TCPA ("Junk Fax"), personal injury, securities, phantom fees, mislabeling of food products and hazardous wastes, among others.

Samuel M. Hill, managing partner for the firm, began concentrating in class litigation in 1994. He has served as class counsel in numerous nationwide cases and is actively involved in class actions emanating from the Firm.

## CLASS ACTION LAWYER

### SAMUEL M. HILL

Mr. Hill practices in the areas of TCPA ("Junk Fax") litigation, taxation, personal injury, food products, general corporate and appellate litigation, and represents clients in complex litigation in state and federal courts. He has also served as a mediator in private actions.

Mr. Hill received his undergraduate degree from the University of North Carolina at Chapel Hill where he was a Johnston Scholar. While in law school at the University of Michigan at Ann Arbor, he served as an Associate Editor and a Note Editor of the Michigan Law Review. He received the Bodman-Longley Award in recognition of his scholastic record. He served a judicial clerkship with Judge Samuel J. Ervin, III, of the United States Court of Appeals for the Fourth Circuit.

Mr. Hill is admitted to practice in the U.S. Court of Appeals for the Eleventh Circuit and the U.S. District Courts for the Southern, Northern and Middle Districts of Alabama.

Mr. Hill has participated in trials in both state and federal courts and appellate practice before the United States Supreme Court, including the BMW v. Gore matter. He serves as Tribal Judge for the MOWA Band of Choctaw Indians in Mobile, Alabama, serve as an adjunct of American Indian Law at Samford University's Cumberland School of Law and is a Past President of the National Native American Bar Association. He has served as a Member of the House of Delegates of the American Bar Association.

The following is a list of class actions in which he has either participated or in which he is currently participating:

*Fred Allen, et al. v. Water Works Board and Jefferson County Commission* in the Circuit Court

1

Jefferson County - Bessemer Div. (CV-01-491) withdrawn.

*Ronald & Nancy McGhee, et al. v. Chase Manhattan, et al.* in the Circuit Court Tallapoosa County (CV-01-58) Dismissed.

*IBEW Local 903 v. Bayer* in the U.S. District Court for the Eastern District of NY (MDL Docket No. 1383) pending.

*Mechanical Contractors, et al. v. Schering Plough, et al.* in the U.S. District Court for the District of NJ (MDL Docket No. 1419) pending.

*Mechanical Contractors, et al. v. Bristol-Myers Squibb, et al.* in the U.S. District Court for Southern District of NY (MDL Nos. 1410 and 1413) settled.

*Mechanical Contractors, et al. v. Zeneca, Inc., et al.* in the U.S. District Court for the Eastern District of New York (MDL No. 1408) pending.

*Mechanical Contractors, et al. v. Abbott Laboratories, et al.* in the U.S. District Court for the District of Massachusetts (MDL Docket No. 1430) pending.

*IBEW Local 903 v. Brystol-Myers Squibb,* in the Supreme Court of the State of NY (Index No. 101588/02) pending.

*Mechanical Contractors, et al. v. SmithKline Beecham, et al.* in the U.S. District Court for the District of Massachusetts (CA No. 01-12239-WGY) pending.

*Mechanical Contractors, et al. v. Bayer Corporation, et al.* in the U.S. District Court for the Eastern District of New York (Master File No. 1:00-MD-1383) pending.

*Mechanical Contractors, et al. v. Glaxosmithkline, et al.* in the U.S. District Court for the Eastern District of Virginia (No. 02-CV-412 and 02-CV-442) pending.

*Mechanical Contractors, et al. v. Glaxosmithkline, et al.* in the U.S. District Court for the Eastern District of Pennsylvania (Master File No. 01-12239-WGY) pending.

*Mechanical Contractors, et al. v. Glaxosmithkline, et al.* in the U.S. District Court for the District of Pennsylvania (CA No. 2:02civ4398 BWK) pending.

*Mechanical Contractors, et al. v. Biovail, et al.* in the U.S. District Court for the District of Columbia (MDL 1515) pending.

*Mechanical Contractors, et al. v. Pfizer, Inc., et al.* in the U.S. District Court for the District of New Jersey (MDL 1479) pending.

2

*Research Solvents & Chemicals, Inc. v. Cintas Corporation, et al.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-01-273) settled.

*Research Solvents & Chemicals, Inc. v. AmeriPride Services, Inc.,* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV 02-1727) settled.

*Clem & Kornis, et al. v. Carnival Corporation, et al.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-02-702) pending.

*Clem & Kornis, et al. v. Choicepoint, et al.* in the Circuit Court of Jefferson County, Alabama, (CV-03-7043) dismissed.

*Clem & Kornis, et al. v. Indata, et al.* in the Circuit Court of Jefferson County, Alabama, (CV-04-2044) dismissed.

*Forstman & Cutchen, L.L.C., et al. v. Away Travel, et al.* in the Circuit Court of Jefferson County, Alabama, (CV-04-2043) pending.

*Clem & Kornis, et al. v. JD&T, d/b/a Travel to Go, et al.* in the Circuit Court of Jefferson County, Alabama, (CV-04-1709) settled.

*Bryson, et al. v. Rexall Sundown, et al.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-01-1087) settled.

*Savagio, et al. v. Walmart, et al.* in the Circuit Court of Jefferson County, Alabama, (CV 03-4283) pending.

*Christine Hobson, et al v.Cingular Wireless, L.L.C.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV03-1316), settled as part of a national class .

*Lewis, Andrea et al v. Nextel* In the Circuit Court of Jefferson County, Alabama,  Bessemer Division, (CV 03-907), settled as part of a national class.

*Revell, Rozel, et al. v. Citigroup, et al.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV02-1727), settled.

*National Metals, Inc. v. BOC Gases* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-00-1275), settled.

*Sanford Barren v. HVC Lizard Chocolate, LLC, et al.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-04-267) settled.

3

*Heather Youngkin v. Steel City Fitness, et al.* in the Circuit Court of Jefferson County, Alabama, (CV-04-1767) settled.

*Green Valley Chiropractic, et al v. UICI, Mega Life & Health, NASE* in the Circuit Court of Jefferson County (CV-04-0088) settled.

*Green Valley Chiropractic, et al v. Barranco Enterprises, et al.* in the Circuit Court of Jefferson County (CV-04-4766) settled.

*Janet Peterson, et al. v. Tyco International (US), Inc., et al.* in the Circuit Court of Jefferson County, Bessemer Division (CV-04-1626) settled.

*Mark Barron, et al. v. Chester A. Asher, Inc.* in the Circuit Court of Jefferson County, Alabama, Bessemer Division (CV-04-1702) settled.

*Tate Gatlin, et al. v. LaFarge, S.A., et al.* in the Circuit Court of Pike County, Alabama (CV-05-0029) pending.

*Anne Wallace v. EAH* in the Superior Court of Dekalb County, Georgia (05-CV-3464-2) settled.

*Lila Cleveland v. Ark-la-Tex Financial Services, LLC* in the Circuit Court of Mobile County, Alabama (CV 2006-2591 00) settled.

*Park Lane Flowers on Cahaba Inc vs Clear Channel Broadcasting Inc.* in the Circuit Court of Jefferson County Alabama (CV-2006-006521) settled.

*Special Occasions, Inc. v. First Choice Funding, Inc. d/b/a Norstar Mortgage* in the Circuit Court of Jefferson County, Alabama (CV-2007-900868) settled.

*Lila V. Cleveland et Al V. Luxe Media Group, Inc., D/b/a Katana Health Solutions*, in the Circuit Court of Mobile County, Alabama (2-CV-2007-900570) settled.

*Lila V. Cleveland et Al V. Ark-la-tex Financial Services d/b/a Benchmark Mortgage* in the Circuit Court of Mobile County, Alabama (02-CV-2007-900568.00) settled.

*Lila V. Cleveland et Al V. Amstar Financial Holdings, Inc.* et al in the Circuit Court of Mobile County, Alabama (02-CV-2007-900599) settled.

*Special Occasions, Inc. v. Heritage Biographical Publications, Inc. d/b/a The Heritage Registry of Who's Who* in the Circuit Court of Jefferson County, Alabama (CV-07-900867) pending.

*Jessica Edwards, et al. v. Jefferson County Commission, et al.* in the Circuit Court of Jefferson County, Alabama (01-CV-2007-900873) pending.

4

*Special Occasions, Inc. v. Norris Paving & Asphalt, Inc. d/b/a Norris Paving* in the Circuit Court of Jefferson County, Alabama (CV-2007-901016) settled.

*The Karaoke Store, Inc. v. Water Cannon, Inc.* in the Circuit Court of Shelby County, Alabama (CV-2007-900381) pending.

*Special Occasions, Inc.* v. JF Wise Enterprises, Inc. d/b/a Logan Farms in the Circuit Court of Jefferson County, Alabama (01-CV-2007-901488) settled.

*Special Occasions, Inc.* v.*Tire Engineers, Inc.* in the Circuit Court of Jefferson County, Alabama (01-CV-2007-9001914) settled.

*Whit Thomas v. Jones Apparel Group, Inc, et al.* in the Circuit Court of Baldwin County, Alabama (CV2007-900703) settled.

*Anne Wallace v. HHGregg,* in the Superior Court of Gwinnett County, Georgia (07-A-05227-4 settled.

*Martin K. O'Toole v. Pitney Bowes, Inc.* in the U.S. District Court, Northern District of Georgia (Atlanta) (1:08-cv-01645-RLV) pending.

Dated this the _30_ day of _July_, 2009.

_Samuel M. Hill_
Samuel M. Hill

## **ACKNOWLEDGEMENT**

I, the undersigned authority, a Notary Public in and for Jefferson County, Alabama, hereby certify that Samuel M. Hill, whose name is signed to this document and who is known to me, acknowledged the same before me on this date that being informed of the contents of said document, he executed the same voluntarily.

Sworn to and subscribed before me this the _3th_ day of _July_, 2009.

_Susan H. Barron_
Notary Public

My Commission expires: _10/22/2011_

7

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| Defendant. | ) | |

## AFFIDAVIT OF HENRY A. TURNER
## IN SUPPORT OF APPLICATION FOR ATTORNEY FEES

STATE OF GEORGIA          §
COUNTY OF DEKALB          §

Before me, the undersigned authority, a notary public in and for said County and

State, personally appeared Henry A. Turner, who being known to me and being by me

first duly sworn deposes and testifies to the following:

1.      My name is Henry A. Turner.  I am the principal of the Turner Law

Offices, LLC, a law firm located in Decatur, Georgia.  I am a member in good standing

1

of the State Bar of Georgia and have been admitted to practice before the Supreme Court of Georgia as well as the U.S. Eleventh Circuit since 1991. This Affidavit is made in connection with the above-captioned action. I have personal knowledge of, and am competent to testify to, the facts set out herein.

2.    I have been a litigator for eighteen (18) years. A major portion of my practice involves representing Plaintiffs in litigation averring violations of the Telephone Consumer Protection Act ("TCPA"), 47 USC § 227, including TCPA Class Action cases.

3.    I initially evaluated and filed the above-captioned case on behalf of Representative Plaintiff and the Putative Class. Thereafter, I associated into the case Samuel M. Hill, Esq. as Class Co-counsel. Together, Mr. Hill and I managed all aspects of the litigation, including devising litigation strategy, attending hearings, coordinating discovery efforts with other counsel, drafting briefs and pleadings, and negotiating the settlement. My role in prosecuting the litigation, along with a discussion of the activities of Plaintiff's Co-Counsel, included participating in early Court-ordered mediation in Cobb County Superior Court. That mediation, through no fault of any party, failed. This matter was thereafter removed to this Court. Upon removal, a Motion to Dismiss was filed by the Defendant. That Motion was briefed.

2

Then full briefing on class certification issues was undertaken. Finally, after full briefing on cross summary judgment issues, the parties involved Richard Sinkfield, Esq. and Frank Lowrey, Esq. as co-mediators. With their assistance, a resolution was reached after two (2) days of intense negotiations.

My role in prosecuting this litigation, along with a discussion of the activities of Mr. Hill, is set out in detail on the accompanying brief in support of this Application.

4.      This is a complex matter arising out of claims based on the junk fax Acts – the Telephone Consumer Protection Act ("TCPA"), and the more recent Junk Fax Prevention Act ("JFPA"). These statutes, enacted in 1991 and 2005, respectively, set forth detailed statutory (and regulatory) requirements for the legal and proper use of telephone facsimile advertising. During the past 5 years I have studied and learned about these Acts and their application in the class action context. During the course of this litigation, I maintained contemporaneous time and expense records on a computer. I spent not less than 750 hours prosecuting this litigation, inclusive of the initial case evaluation and the preparation and filing of the original Complaint in this matter. In my opinion, all of the time that I spent prosecuting the action was reasonable and necessary. Of course, these hours do not reflect the time committed by co-counsel, Mr.

3

Hill.

5.      It is my understanding of Georgia law that attorney fees in common fund

cases such as this are to be determined as a percentage of the fund.  Accordingly, the

number of hours spent by counsel and the appropriate hourly rate to be used are of only

limited importance.  To the extent, however, that the time spent and the rates charged

for hourly-rate attorneys' fees are relevant for purposes of determining the appropriate

percentage fee to be awarded, it is my opinion that:

> A.      The prevailing non-contingent hourly rates currently charged by
>
> experienced plaintiffs' counsel in sophisticated, complex litigation in
>
> Atlanta and similar metropolitan areas varies in the range of $250 to $500
>
> per hour, with many practitioners, especially those engaged in nationwide
>
> practices, charging still higher rates.  For practitioners engaged in
>
> national practices involving complex litigation, rates customarily are
>
> charged which fall in the upper part of the usual range of rates charged by
>
> experienced practitioners in more traditional litigation.  To handle a case
>
> such as this on an hourly basis, I would charge a minimum of $375 per
>
> hour and this rate is well within the range charged in similarly complex
>
> non-contingent cases.

B.    Hourly rates of defense counsel are sometimes lower than those charged by plaintiffs' Counsel, even on a non-contingent basis, because, *inter-alia*, defense counsel often represent clients with whom they have, or desire, an ongoing relationship, and therefore adjust rates downward in anticipation of payment for future or additional work, in contrast to plaintiffs' counsel who usually represent clients on a one-time basis.

6.    From my experience and observation, it is my opinion that counsel with the qualifications and experience necessary to properly handle complex class actions such as this case would not take cases similar to this one without the expectation of a substantial enhancement being added to the Court-awarded attorney fees to compensate such counsel for the considerable risk of prosecuting the case for years on a contingent fee basis and to compensate for the delay in receipt of the fees. Practical economics dictate that a law practice based on fees that are contingent and achieving a successful result must be higher than fees based on non-contingent services, which will be payable regardless of the results obtained. The risks of nonpayment are greatly multiplied (i) in complex class actions, (ii) to small firms such as Class Counsel, and (iii) where, as here, counsel advance the expenses of litigation.

7.      As a result of these factors, economics of law practice would prevent me from accepting a plaintiff's case on purely contingent fee basis unless I could feel reasonably sure that a court-awarded fee would compensate me both for accepting the risk of not being paid regularly, if at all, and for the delay in payment.  It is my opinion, formed from my direct experience with clients and others with potential claims involving complex class action litigation, that without such enhancements serving as an incentive to the lawyers who are qualified to handle this sort of case, most persons with small individual claims will not be able to hire competent counsel to represent them in mass tort class actions such as this one at the bar.  Without the willingness of lawyers with the requisite degree of skill, competence and creativity necessary to obtain this sort of result, the class members would have been without redress. A copy of my Resume' has previously been placed on record in this case.

8.      In my experience, the usual percentage-based fee in this court in non-class action contingent fee cases ranges from one-third to one-half of the recovery. All Class Counsel in the case *sub judice* have agreed to seek aggregate fees and expenses of $950,000.00 (less than one-third of the total value of the settlement).  The fee requested here is significantly lower than the fees charged in similar non-class action contingent fee litigation.  I therefore believe the requested fee to be presumptively

6

reasonable in my experience and absolutely necessary to attract competent counsel to

pursue this sort of complex litigation in the future.

   FURTHER AFFIANT SAYETH NOT.

_____
Henry A. Turner

   Subscribed and sworn before me on the 23rd day of July, 2009, to certify
which witness my hand and official seal.

_____
Notary Public

SEAL

ANNE H WALLACE
Notary Public, DeKalb County, Georgia
My Commission Expires March 5, 2012

## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the within and foregoing Brief in Support of Application by Class Counsel for Award of Attorneys Fees in the above-captioned case with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

**Jennifer A. Adler**  jaadler@rkmc.com

**Marla R. Butler**  mrbutler@rkmc.com

**Lisa L. Heller**  llheller@rkmc.com, dklee@rkmc.com

**Meredith Hudmon Ragains**  mhragains@rkmc.com, sscost@rkmc.com

This  30th day of July, 2009.

/s/ Samuel M. Hill
SAMUEL M. HILL
 Attorney for Plaintiff,
pro hac vice

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue South, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
e-mail: sam@hillturner.com

34

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-cv-01645-RLV |
| PITNEY BOWES, INC., | ) ) | **CLASS ACTION** |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing Brief in Support of Application by Class Counsel for Award of Attorneys Fees in the above-captioned case has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

/s/ Samuel M. Hill
SAMUEL M. HILL
Attorney for Plaintiff,
*pro hac vice*

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue South, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
e-mail: sam@hillturner.com

36