## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARTIN K. O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) |
| PLAINTIFFS, | ) ) |
| v. | ) ) |
| PITNEY BOWES INC., | ) ) |
| DEFENDANT. | ) ) ) |

CIVIL ACTION FILE NO.

1:08-CV-1645-RLV

**CLASS ACTION**

## <u>MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION  SETTLEMENT</u>

COMES NOW, plaintiff Martin K. O'Toole and defendant Pitney Bowes Inc., and jointly submit their Memorandum of Law in Support of Joint Motion for Final Approval of Class Action Settlement.

## I.    <u>PRELIMINARY STATEMENT</u>

This is a settlement class action arising out of Pitney Bowes Inc.'s ("Pitney Bowes") facsimile marketing program for its customers.   Plaintiff Martin O'Toole ("Mr. O'Toole") contends that Pitney Bowes sent unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 <u>et seq</u>. ("TCPA") and the regulations promulgated thereunder.  Pitney Bowes

denies the allegations of the Complaint and denies any liability to Mr. O'Toole or any persons similarly situated in connection with any of the claims asserted in the Complaint.  Pitney Bowes further denies that its fax marketing program violated the TCPA or any of its regulations.

Following discovery and extensive motion practice regarding the issues in this case, Mr. O'Toole and Pitney Bowes engaged in extensive arm's-length negotiations with respect to settlement of this matter, with the involvement of two neutral mediators, Richard Sinkfield, Esq. and Frank Lowrey, Esq.  As a result of those discussions, and two (2) days of intensive Mediation, the parties reached an agreement to resolve this litigation in a manner they believe is fair and reasonable. The proposed settlement consists of both injunctive and monetary relief.  Under the terms of the settlement, Pitney Bowes agrees to refrain from using facsimile advertising that contains the opt-out language set forth in the fax advertisements sent to members of the Settlement Class.  With respect to monetary relief, Pitney Bowes further agrees that each member of the Settlement Class is entitled to a product certificate ("Product Certificate") for $26.00 off of a $100.00 purchase of compatible ink or toner from Pitney Bowes for each week during the Class Period that the customer received a fax under the Donut Fax Program (the "Settlement").

Each party to this action believes strongly in the strength of its respective case on the merits, but each recognizes the expense and risks of proceeding in protracted litigation.   The parties respectfully submit that the Settlement accounts for these competing tensions and provides Mr. O'Toole and the members of the Settlement Class substantial benefits.

The parties believe that the Settlement is fair, adequate, reasonable and in the best interest of all class members.  The Settlement Agreement was negotiated at arm's length by experienced and knowledgeable counsel, following completion of substantial discovery, independent investigation and extensive briefing on dispositive motions.[1]   Following this Court's preliminary approval of the Settlement, Pitney Bowes mailed a Notice of Pendency of Class Action and Hearing on Proposed Settlement to the members of the Settlement Class.  The time period for objections to the settlement has now passed, and no class members have objected to the settlement.  Accordingly, pursuant to Fed. R. Civ. P., Rule 23(e), the parties respectfully request that this Court finally approve the settlement and certify the Settlement Class.

---

[1]     The Settlement Agreement is attached as Exhibit "A" for the Court's convenience.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Allegations Of The Complaint.

Mr. O'Toole filed this action in November 2007.  He originally filed this action in the Superior Court of Cobb County, Georgia and has twice amended his complaint.  In March 2008, Mr. O'Toole filed his First Amended Complaint omitting certain claims and adding one additional claim under the TCPA; and in April 2008, Mr. O'Toole filed a Second Amended Complaint eliminating his damage limitation.  Pitney Bowes thereafter removed this action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Plaintiff did not object to said removal.

In his Second Amended Complaint, Mr. O'Toole alleged that, as part of its sales efforts, Pitney Bowes continued a fax program instituted by Laser Life a company whose assets were substantially acquired by Pitney Bowes.  (Second Amended Complaint, ¶¶ 19-28).[2]  Through this program, Pitney Bowes faxed individuals or entities in metropolitan Atlanta that had previously purchased product from it, as identified by the assignment of a customer number, a reminder that purchasing ink or toner that day would result in delivery on Monday, along

---

[2]      In May 2007, Pitney Bowes purchased substantially all of the assets of Laser Life for almost $12,000,000.  Among other things, Pitney Bowes acquired Laser Life's customer lists, customer histories and goodwill.

with donuts for the office.  This program was known as the "Donut Fax Program."
Each donut fax contained contact information for Laser Life/Pitney Bowes,
including a local phone number, a local fax number, an email address and a
website address.  In addition, at the bottom of the first page, each donut fax states:
"[t]o be removed please call: 800.841.4362 – ext: 36520."

Mr. O'Toole brought this case on behalf of a putative class of recipients of
unsolicited donut faxes, alleging that Pitney Bowes' donut faxes violated the
TCPA.  (Second Amended Complaint, ¶¶ 29-31).  Counts I and II of the Complaint
alleged that the opt-out notice on the donut faxes did not comply with the TCPA
and its regulations (Second Amended Complaint, ¶¶ 32-39), and Count III of the
Complaint alleged that Pitney Bowes sent donut faxes to individuals and
businesses with whom it did not have an Established Business Relationship (as that
term is defined in the TCPA) or prior express invitation or permission to send the
facsimiles.  (Second Amended Complaint, ¶¶ 40-43).   In Count IV of the
Complaint, Mr. O'Toole alleged that Pitney Bowes violated the TCPA willfully or
knowingly, and therefore plaintiffs and the members of the class were entitled to
treble damages.  (Second Amended Complaint, ¶¶ 44-47).  Pitney Bowes denied
the allegations of the Complaint, and denied any liability to Mr. O'Toole or any
members of any putative class.  (Answer to Second Amended Complaint).

**B.**     <u>**Procedural History and Settlement Negotiations**</u>.

The parties engaged in discovery following Mr. O'Toole's filing of the Second Amended Complaint.   The parties exchanged and responded to written discovery requests, including requests for the production of documents and interrogatories.   The parties also took a number of depositions.   Following discovery, in July 2008, Pitney Bowes moved to dismiss Mr. O'Toole as a plaintiff for lack of standing.   In August 2008, Mr. O'Toole moved for certification of his putative class and in October 2008, both parties filed cross motions for partial summary judgment.   This Court has not ruled on any of these motions and said motions will become moot upon this Court Granting Final Approval of the Settlement Agreement between the parties.

As set forth above, in January 2009 the parties engaged in extensive arm's-length negotiations through an intense two-day Mediation with the involvement of two highly skilled neutral mediators.   Through this mediation, and the guidance of the Mediators, the parties agreed upon the terms and conditions of the Settlement.

**C.**     <u>**The Settlement Terms**</u>.

The terms of the parties' Settlement, which is set forth more fully in the accompanying Settlement Agreement, contains both non-monetary equitable relief and monetary relief.

1.    **The Settlement Class**.

The "Settlement Class" is defined as follows:

> All Pitney Bowes customers, natural or otherwise, defined as individuals or entities assigned a customer number, throughout the State of Georgia to whom Pitney Bowes, sent or caused to be sent in 2007, one or more facsimile transmissions with content substantially similar to that contained in any of the attached Exhibits A through H of Mr. O'Toole's Amended Complaint.

> Excluded from the class is any Pitney Bowes agent, employee, or shareholder.  Also excluded from the class are all judges of the magistrate, state, or superior courts of the State of Georgia as well as all the judges of the Court of Appeals and justices of the Supreme Court of the State of Georgia.

> Also excluded from the class is anyone who has filed separate litigation against Pitney Bowes for the same conduct alleged in this litigation, unless said individual consents to the consolidation of his case with the instant case.

> Also excluded from the class is anyone who has released Pitney Bowes from the same conduct alleged in this litigation.

> (Settlement Agreement, ¶ 2).

2.    **Injunctive Relief**.

With respect to injunctive relief, the Pitney Bowes compatible ink and toner

line of business agreed to refrain from using facsimile advertising that contains the

opt-out language set forth in the donut fax advertisements sent to members of the Settlement Class.  (Settlement Agreement, ¶ 4).

### 3.     <u>**Monetary Relief**</u>.

With respect to monetary relief, in general, each member of the Settlement Class is entitled to a product certificate ("Product Certificate") for use in purchasing compatible ink or toner from the Pitney Bowes Supply Line for each week during the Class Period that the customer received a fax under the Donut Fax Program (i.e., each member of the Settlement Class will receive one Product Certificate for each week that it received a Donut Fax from Pitney Bowes). (Settlement Agreement, ¶ 5).  Each Product Certificate will entitle each customer to $26.00 off of a $100.00 purchase of compatible ink or toner from Pitney Bowes. The Product Certificates may be applied to the costs of goods purchased, shipping, handling or other related charges.   Under the Settlement, this payment will constitute the entire amount that Pitney Bowes is required to pay to the members of the Settlement Class, and the face value of this monetary relief is not to exceed $2,000,000.00.  <u>Id.</u>

Although the details regarding the Product Certificates are set forth in the attached Settlement Agreement, in general, Pitney Bowes will mail the Product Certificates to members of the Settlement Class at their last known address without

requiring such members to submit a claim.   (Settlement Agreement, ¶ 6). Members of the Settlement Class may, however, make a claim by sending a letter to Settlement Class Counsel and Counsel for Pitney Bowes containing their name, address, phone number and facsimile number.   Pitney Bowes agrees to begin mailing Product Certificates no later than 45 days after this Court has entered a Final Judgment and Order.

Under the terms of the Settlement Agreement, the Product Certificates may be redeemed for any compatible ink or toner offered for sale by Pitney Bowes in Marietta, Georgia.  (Settlement Agreement, ¶ 8).  The Product Certificates may not be used for any purpose other than for ordering compatible ink and toner from Pitney Bowes and may not be redeemed for cash.  They are fully transferable within the United States and members of the Settlement Class may "stack" product certificates by redeeming more than one certificate at one time (e.g., members of the Settlement Class may combine two product certificates for $52.00 off of a $200.00 purchase of ink and/or toner).  (Settlement Agreement, ¶¶ 7-8).  However, Product Certificates may not be "bundled" (e.g., members of the Settlement Class may not put two or more certificates together to combine the dollar-off amount on a $100.00 purchased).  (Settlement Agreement, ¶ 8).  Under the terms of the Settlement Agreement, Product Certificates will expire twelve (12) months after

the date Pitney Bowes places the Product Certificate in the mail.  (Settlement Agreement, ¶ 8).

In return, plaintiff agreed to dismiss this lawsuit with prejudice, and Mr. O'Toole and the members of the Settlement Class agree to release Pitney Bowes and its successors from any and all claims related to any fax received by a class member from Pitney Bowes.  (Settlement Agreement, ¶15).

Also under the terms of the Settlement, counsel for Mr. O'Toole will seek an incentive payment award to him of Five Thousand Dollars ($5,000), and Pitney Bowes agrees that it will not object to such an incentive award. (Settlement Agreement, ¶ 9).   The incentive award will be paid by Pitney Bowes to Mr. O'Toole.   (Settlement Agreement, ¶¶ 9, 13).   The parties further agree that reasonable attorneys' fees generated during the course of the litigation against Pitney Bowes shall be paid to Settlement Class Counsel in an amount to be awarded by the Court.   Under the terms of the Settlement, Settlement Class Counsel agreed not to seek attorneys' fees in an aggregate amount greater than $950,000.00, and Pitney Bowes agreed that it will not oppose any request by Settlement Class Counsel for an award of attorneys' fees up to an amount of $950,000.00.   The amount of fees awarded to Settlement Class Counsel will be

paid directly by Pitney Bowes and completely independent of the Class Members Common Fund. (Settlement Agreement, ¶¶11, 13).

Considering the benefits of the Settlement and the risks of litigation, the parties have concluded that it is in the best interests of the class to enter this Settlement.

### D.   <u>Notice and Opt-Outs</u>.

On April 24, 2009, this Court preliminarily approved the Settlement, conditionally certified the Settlement Class, and approved of Pitney Bowes as the Administrator of the Settlement.  The Court further appointed Henry A. Turner and Samuel M. Hill, counsel for Mr. O'Toole, as Class Counsel.  (April 24, 2009 Order, ¶ 13).

The Court directed Pitney Bowes to send, via first-class mail, a Notice of Pendency of Class Action and Hearing on Proposed Settlement ("Class Notice") to the members of the Settlement Class.  (April 24, 2009 Order, ¶ 2).  Under the terms of the Settlement Agreement, mailing of the Class Notice was to begin within thirty (30) days after the grant of preliminary approval, and Pitney Bowes was to use its best efforts to complete the mailing within sixty (60) days after preliminary approval.  (Settlement Agreement, ¶ 17).

Pursuant to the Court's direction, Pitney Bowes mailed the Class Notice, via standard-class mail, to all Pitney Bowes customers (defined as individuals or entities assigned a customer number) throughout the State of Georgia to whom Pitney Bowes sent or caused to be sent, one or more "donut faxes" in the year 2007. (Affidavit of Joseph C. Kirincich attached as Exhibit "B," ¶ 5)("Kirincich Aff."). Pitney Bowes identified the customers to whom the Class Notice was sent through its SalesLogix database and mailed the Class Notice to its customers at their last known address. (Kirincich Aff., ¶ 5). Pitney Bowes mailed a total of Three-Thousand, One Hundred Ten (3110) Class Notices to the members of the Settlement Class. (Kirincich Aff., ¶ 6). The court-approved Class Notice informed the class members, inter alia, of the general parameters of the settlement, where information about more specifics could be obtained, how to opt-out of the Settlement and how (and by when) objections to the Settlement could be made. (Kirincich Aff., ¶ 7). Pitney Bowes completed the mailing of the Class Notices as of June 19, 2009. (Kirincich Aff., ¶ 6).

The deadline for objecting or opting out was July 23, 2009. Only four potential class members have elected to opt out of the Settlement. No objections to the Settlement have been received from any class member.

III.   **ARGUMENT**

A.   **The Settlement Class Should Be Finally Certified.**

The Supreme Court has held that the certification of a class, even if only for settlement purposes, must meet the requirements of Fed. R. Civ. P. 23(a) and 23(b), which protect against "unwarranted or overbroad" class definitions. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997) (noting, however, that a common interest in settlement is a relevant consideration in the certification analysis); see also, Columbus Drywall & Insulation, Inc. v. Masco Corporation, 2007 U.S. Dist. LEXIS 52589 (N.D. Ga. July 20, 2007)(finding that in order to certify settlement class, court must determine whether the settlement class meets the requirements of Rule 23).[3]

---

[3]   As the Supreme Court noted in Amchem, Rule 23(a) enunciates four "threshold requirements" for class actions: (1) numerosity ("a class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class"). Id. at 613.  Rule 23(b)(3), which permits the type of "opt-out" class action at issue in this case, includes a non-exhaustive list of factors pertinent to a court's examination of the predominance and superiority criteria: (A) the interest of members of the class individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties encountered in the management of a class action.  Id. at 615-16 (quoting Fed. R. Civ. P. 23(b)(3)).

On April 24, 2009, this Court conditionally certified the Settlement Class, finding that common issues predominated, Mr. O'Toole was an adequate class representative, Class Counsel was capable of adequately representing the class, and that treatment of this matter as a class action was superior to other methods of treatment.  (April 24, 2009 Order at ¶¶ 14-16).  The parties respectfully submit that all of the requirements of Rule 23 continue to be satisfied by the Settlement Class and request that this Court finally certify the same Settlement Class conditionally certified on April 24, 2009.

### 1.     The Requirements Of Rule 23(a) Are Met.

The Settlement Class in this case contains over Three Thousand (3,000) members.  In these circumstances, the numerosity requirement is easily satisfied. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)(holding that, generally, more than 40 class members satisfies numerosity).

With respect to commonality, Mr. O'Toole's complaint alleges that Pitney Bowes engaged in a common course of conduct with respect to the unsolicited donut faxes it sends to its customers.  (Second Amended Complaint, ¶13).  Among the common questions of law and fact presented by these allegations are: (a) whether the Donut Faxes sent by Pitney Bowes to individuals or entities in metropolitan Atlanta that had previously purchased product from it violated the

TCPA; and (b) whether the opt-out language contained on the Donut Faxes violated the TCPA.  Commonality is met here.  See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 724-25 (11th Cir. 1987)(holding that commonality exists where standardized conduct or uniform written materials are directed toward the members of a proposed class).

The Eleventh Circuit has held that the typicality requirement of Rule 23(a)(2) asks whether the claims of the named plaintiffs arise from the same practice or course of conduct giving rise to the claims of other class members, and whether such claims are based upon the same legal theories.   Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985).  Mr. O'Toole's alleged claims arise from the same pattern or practice (the faxing of allegedly unsolicited fax advertisements containing virtually identical material), and are based upon the same legal theories (violation of the TCPA) as the claims of the Settlement Class. Mr. O'Toole and the other members of the Settlement Class seek to recover damages for their losses caused by Pitney Bowes' alleged common course of conduct.  Typicality is also met.

Finally, this Court has already held in its April 24, 2009 Order that both Mr. O'Toole and his counsel will fairly and adequately represent the Settlement Class. The parties submit that, for purposes of final approval of the Settlement Class, Mr.

O'Toole and his counsel will continue to adequately represent the class.   Mr. O'Toole, claims the same harm as the other members of the Settlement Class, and therefore has every incentive to pursue vigorously these claims as representative of the class.   See In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 208 (5th Cir. 1981)("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.")   With respect to Class Counsel, Mr. Hill and Mr. Turner have expended significant time and expense in investigating and litigating this matter.   They are both experienced in matters arising under the TCPA and remain committed to utilizing the resources necessary to fairly and adequately represent the Settlement Class.

### 2.    The Requirements Of Rule 23(b)(3) Are Met.

A class action is also superior to other available methods for resolving this controversy.   Rule 23(b)(3) provides that a class action may be maintained if the Court finds that a class action is "superior to other methods for the fair and efficient resolution of the controversy."   The Rule lists four non-exclusive factors to be considered in this analysis:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members

>of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
>
>Fed. R. Civ. P. 23(b)(3).

Only the first three factors are pertinent to this Court's examination of the superiority requirement.[4]  Nothing about this case or the Settlement suggests that individual class members would prefer individual control of this litigation.  Pursuit of individual claims is not likely to be economically practical.  In fact, only four members of the Settlement Class opted out of the settlement.

With respect to the second factor in the superiority analysis, the extent and nature of litigation concerning this controversy, the Parties are unaware of any other similar claim filed by a member of the Settlement Class.

Finally, in light of the discovery conducted to date and the arm's length negotiation of the Settlement, the desirability of concentrating the litigation of claims against Pitney Bowes in this forum is evident.  Resolution of the class member's claims in a single forum is superior to the filing of innumerable individual lawsuits.  Class treatment in this case is superior.  See Ingram v. Coca-Cola Company, 200 F.R.D. 685, 701 (N.D. Ga. 2001).

**B.**     **The Proposed Settlement Meets All Standards For Approval.**

**1.**     **The Standards for Approving a Class Action Settlement.**

Settlements are encouraged in all cases, especially in complex class actions, where the costs, delays, risks and uncertainties inherent in such litigation may soon overwhelm any potential benefit the class could have hoped to obtain.   The Eleventh Circuit has held that courts are to favor the settlement of class actions, because of their notable uncertainty, difficulty in proof, and potential length.   In re U.S. Oil and Gas Litigation, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

In light of this strong judicial policy favoring settlements, approval is left to the sound discretion of the trial court.   Accordingly, "there is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation."   Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).   As the Eleventh Circuit has emphasized:

> Public policies strongly favor the pretrial settlement of class action lawsuits.   Complex litigation - like the

---

[4]     In a case involving certification of a settlement class, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."   Amchem, 521 U.S. at 620.

> instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering the meaningful release increasingly elusive.

In re: U.S. Oil and gas Litigation, 967 F.2d at 493.

In reviewing a proposed settlement, a court does not decide the merits, resolve unsettled questions, or conduct a trial.   In re Corrugated Container Antitrust Litigation, 643 F.2d at 212; In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 315 (N.D. Ga. 1993).  As stated by the Court in In re Domestic Air Transp. Antitrust Litig.:

> The court is entitled to rely on the judgment of the parties in approving the proposal and should be 'hesitant to substitute its own judgment for that of counsel.' The court's authority likewise does not extend to modification of the settlement; the court may only approve or disprove a proposed settlement. Overall, the court must be satisfied that the settlement was not a product of collusion but reached pursuant to arms length negotiations between the parties after significant discovery.

In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 313; quoting Cotton, 559 F.2d at 1330; In re Motorsports Merchandise Antitrust Litig., 112 F. Supp.2d 1329, 1333 (N.D. Ga. 2000).  The Court's inquiry "is premised upon 'balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial.'"  Elkins v. Equitable Life Insurance, 1998 U.S.

Dist. LEXIS 1557, *76-77 (M.D. Fla. Jan. 28, 1998) (quoting In re Chicken Antitrust Litigation, 560 F. Supp. 957, 960 (N.D. Ga. 1980)).

The goal of the Court's inquiry is to ensure the settlement agreement reached is fair and reasonable.  In re Domestic Air Transp. Litigation, 148 F.R.D. at 305.  Thus, a settlement should be approved "if it is fair, adequate, reasonable and free of fraud or collusion."  In re Motorsports Merchandise Antitrust Litigation, 112 F. Supp.2d at 1333 (citing Bennett, 737 F.2d at 986; Cotton, 559 F.2d at 1330; Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 538 (S.D. Fla. 1988)).  With respect to this inquiry, this Circuit has identified the following factors to be considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Bennett, 737 F.2d at 986; see also Meyer v. Citizens and Southern National Bank, 677 F. Supp. 1196, 1201 (M.D. Ga. 1988) (identifying "judgment of experienced counsel" and "procedures afforded to notify the class members of the proposed settlement. . . ." as additional factors).  Consideration of all these factors mandates approval of the Settlement here.

### a.   The Likelihood of Success at Trial is Uncertain Given the Complexity of the Case and Uncertainty of Litigation.

The first three factors are closely related, requiring a comparison of the benefits to the Settlement Class and the likelihood of achieving recovery for the class at trial.

This Court has noted that "[b]y far the most important factor in evaluating the fairness and adequacy of a settlement is the likelihood and extent of any recovery from the defendants absent the settlement." In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 314.   In evaluating the likelihood of success, however, a trial judge "has neither the right nor the duty" to reach any ultimate conclusions on the merits of the controversy. Id. at 313.  Rather, the court must be mindful that inherent in compromise is "a yielding of absolutes and an abandoning of high hopes." Cotton, 559 F.2d at 1330.  See also In re Corrugated Container Antitrust Litig., 643 F.2d at 212 (policy encouraging settlements would be violated if approval hearing "meant establishing success or failure to a certainty"). Accordingly, this Court may consider—but not decide—the hurdles that Mr. O'Toole would have faced in obtaining success in this litigation.  These include: the motion for class certification, the motion to dismiss for lack of standing, Pitney Bowes' motion for partial summary judgment, and the possible trial.

From both a legal and factual standpoint, Mr. O'Toole faces challenges in establishing liability.   Pitney Bowes has maintained throughout this case that it has not violated the TCPA.  Before this case reaches trial, Mr. O'Toole must overcome legal challenges to his status as a proper plaintiff, to the legal sufficiency of the allegations of his complaint and to the propriety of class certification.

At the outset, plaintiff's likelihood of success at trial "depends heavily on whether the class would be certified" if the settlement were not approved.  See In re Motorsports Merchandise Antitrust Litig., 112 F. Supp.2d at 1333.   In this case, Pitney Bowes made numerous arguments in opposition to Mr. O'Toole's motion for class certification.  Pitney Bowes argued that Mr. O'Toole's class definition was unascertainable because it required a determination of the merits of each putative class member's claims to ascertain who was in the class.   Kenro, Inc. v. Fax Daily, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997). It further argued that individual questions of fact predominated, making manageability of this litigation as a class action very questionable.  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997).  Finally, Mr. O'Toole accused Pitney Bowes of violating a complex regulatory scheme subject to different reasonable interpretations.  Pitney Bowes argued that Eleventh Circuit law established that such accusations, especially where any violation is unintentional and resulted in no

actual harm to the plaintiff, are not appropriate for class certification. Given these arguments, class certification in this case was questionable.

Pitney Bowes also asserted other legal challenges to Mr. O'Toole's claims. It moved to dismiss Mr. O'Toole for lack of standing, on the ground that the faxes at issue were sent to his law firm, Griffin & O'Toole, LLP, and not him individually. Pitney Bowes also moved for partial summary judgment on the ground that Laser Life's established business relationships, or "EBRs" as defined by the Telephone Consumer Protection Act ("TCPA"), necessarily, and as a matter of law, transferred to Pitney Bowes pursuant to its acquisition of the goodwill of Laser Life. As the result of the transfer of the EBRs, Pitney Bowes argued that it was not liable to Mr. O'Toole for improperly sending facsimile advertisements to recipients with whom Pitney Bowes had an EBR.

Even assuming Mr. O'Toole could overcome these hurdles, courts in the Eleventh Circuit have recognized that principles of fairness weigh against imposing significant liability for alleged technical violations of a complex statute which caused no actual harm to anyone. See, e.g., Smith v. Highland Bank, 108 F.3d 1325, 1327, n.4 (11th Cir. 1997). Mr. O'Toole must prevail on each and every one of these issues to succeed.

The parties here only entered into the Settlement after carefully weighing the pros and cons of continued litigation.   Complex class actions are inherently difficult and carry with them risks.   It would be unwise to risk the substantial benefits that the Settlement confers upon the class to pursue the risk of trial.

### b.   The Proposed Settlement Falls Within the Range of Possible Recoveries.

Weighed against the strength of Mr. O'Toole's case and the likelihood of success at trial, the Proposed Settlement provides relief that is within the "range of reasonableness."   In re Domestic Air Transp. Antitrust Litigation, 148 F.R.D. at 319 (". . . Court must determine whether [settlement] falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation.")(internal citation omitted); see also, Huguley v. General Motors Corp., 128 F.R.D. 81, 88 (E.D. Mich. 1989)(noting that if the settlement was not approved, "plaintiff class might not be able to establish liability; or, alternatively, the relief available might be less than that provided in the proposed consent decree."); see also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc., 234 F.R.D. 627, 631 (W.D. Ky. 2006) (finding that numerous issues, including "the uncertainty related to the proof of the allegations in the complaint, the likely appeal if the Plaintiffs prevailed . . ." created a risk that the

class would not be able to recover a greater amount at trial than it got in the settlement, weighing in favor of the settlement).

Although the range of possible recovery in this case may reach several million dollars, as noted above, from both a legal and factual standpoint, Mr. O'Toole faces challenges in establishing liability.  The evidence raised issues of fact that would possibly have allowed the Court to resolve this case in favor of Pitney Bowes.  Had this occurred, the recovery would have been zero.

### c.    The Settlement Terms Fall Within the Range of Reasonableness.

The third factor is similar to the second one, but examines the Settlement terms more specifically.  In examining the terms, the Court must take into account "the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).  A court considering a proposed settlement "must determine whether it falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation.'"  In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 319 (quoting Fisher Bros. v. Cambridge-Lee Indus., 630 F. Supp. 482, 489 (E.D. Pa. 1985)).

As noted above, the inquiry is premised upon "balancing the probabilities," not on assuring that the class receives every benefit that may have been won at

trial. <u>Elkins</u>, 1998 U.S. Dist. LEXIS 1557 at *76-77 (quoting <u>In re Chicken Antitrust Litigation</u>, 560 F. Supp. 957, 960 (N.D. Ga. 1980)); <u>Huguley v. General Motors Corp.</u>, 128 F.R.D. 81, 88 (E.D. Mich. 1989)(finding that the court must evaluate the adequacy of the consent decree by weighing "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.")  In other words, the settlement "need not provide the optimal relief, so long as there appears to be a genuine quid pro quo."  <u>Elkins</u>, 1998 U.S. Dist. LEXIS 1557 at *81 (citing <u>Warren v. City of Tampa</u>, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988)).

Under the terms of the Settlement, the members of the Settlement Class will receive substantial benefits.  In addition to injunctive relief, the Settlement offers real compensation to all members of the Settlement Class.  As noted above, each member of the Settlement Class is entitled to a product certificate for $26.00 off of a $100.00 purchase for each week that it received a Donut Fax from Pitney Bowes.  Settlement Class Members do not have to file a claim to be entitled to the Product Certificates.  The Product Certificates may be applied to the costs of goods purchased, shipping, handling or other related charges.  The Product Certificates

will be fully transferable, and members of the Settlement Class may "stack" product certificates by redeeming more than one certificate at one time.[5]

In addition to this compensation, Settlement Class members will receive two additional benefits.  The Settlement further provides that Pitney Bowes will pay all costs of administration of the settlement, and will not object to an incentive payment of up to Five Thousand Dollars ($5,000) to Mr. O'Toole or to a request by Settlement Class Counsel for an award of attorneys' fees up to an amount of Nine Hundred Fifty Thousand Dollars ($950,000).   Further, the foregoing payments will be made directly by Pitney Bowes and will not be taken from the Class Members' Common Fund.  Balanced against the risks and costs of further litigation, this Settlement offers real, immediate compensation to Settlement Class members.

---

[5]     Settlements in the form of product discounts for future purchases are common and frequently approved by courts throughout the country.  For example, in In re Domestic Air Transp. Antitrust Litig., the court approved a settlement in which the defendants would be released from all price fixing claims in exchange for discount travel certificates.  148 F.R.D. at 305.  See, also, In re Mexican Money Transfer Litig., 267 F.3d 743 (7th Cir. 2001) (permitting discount coupons for future money transfer costs); Langford v. Bombay Palace Restaurants, Inc., No. 88 Civ. 5279 (CSH), 1991 U.S. Dist. LEXIS 4730 (S.D.N.Y. Apr. 8, 1991) (allowing coupons for purchase of food); In re Cuisinart Food Processor Antitrust Litig., 1983-2 Trade Cas. (CCH) ¶65,680 (D. Conn., Oct. 24, 1983) (allowing 50% discount for purchase of Cuisinart machines).

**d.      The Complexity, Expense and Duration of Litigation Supports Settlement.**

This factor assesses the value of foregoing further litigation.  "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."  In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 326 (internal citations omitted).

Continued litigation of this case would entail significant motion practice and trial, including motions in limine and trial motions for directed verdict, judgment as a matter of law (if necessary), a motion for decertification of the class (if necessary), and judgment notwithstanding the verdict (if necessary).   The losing party at trial would likely appeal the outcome to the U.S. Court of Appeals for the Eleventh Circuit.  Protracted litigation would be costly and time consuming for both sides.  The fact that members of the class will obtain immediate relief under a settlement agreement, rather than go to trial and prevail and potentially wait years for relief, weighs in favor of approving settlement.  See Robinson v. Ford Motor Co., 2005 U.S. Dist. LEXIS 11673, *14 (S.D. Ohio June 14, 2005).

**e.      Reaction of the Class to the Settlement Warrants Approval.**

As noted above, only four members of the Settlement Class have opted out of the settlement, and **no** class members have objected to the Settlement.  While it

is well established that a settlement can be fair notwithstanding a large number of objectors, the proposed settlement here is notable for the lack objections to its approval.  New England Health Care Employees Pension Fund, 234 F.R.D. at 632 (noting the importance of the fact that no objections to the proposed settlement were filed by any class member);  In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. at 326; Cotton, 559 F.2d at 1331.

**f.    The Stage of Proceedings Supports The Settlement Reached.**

This lawsuit was originally filed in October 2007.   Since that time, numerous documents have been produced and reviewed, and depositions have been taken.  The parties have conducted sufficient discovery to assess the strengths and weaknesses of the claims.  They have litigated issues of standing, discovery issues, class certification and the sufficiency of the allegations in the complaint.  Where, as here, the parties have conducted significant discovery and are well-versed in the strengths and weaknesses of their claims, settlement is favored.   Holden v. Burlington Northern, Inc., 665 F. Supp. 1398, 1423 (D. Minn. 1987)("[i]t is clear that by the time the proposed settlement was reached, each party was keenly aware of the strengths and weaknesses of its case and was well able to accurately assess the benefits of the proposed settlement in light of the risk, expense, and delay associated with continued litigation"); City Partnership Co. v. Atlantic Acquisition

Ltd. Partnership, 100 F.3d 1041, 1043 (1st Cir. 1996)("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.")(citations omitted);  See also Newberg on Class Actions 3d § 11.42 ("[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

Given the uncertainty of proving liability, the possible range of recovery and the length and expense of pretrial and trial activities, the parties respectfully submit that the Court should finally determine that the Settlement is fair, reasonable, and adequate, and not the product of collusion.  See Leverso v. South Trust Bank, 18 F.3d 1527, 1530 (11th Cir. 1994).

**2.      The Settlement Resulted From Arm's-Length Negotiations And Was Not The Product Of Any Fraud Or Collusion.**

Courts uniformly recognize an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  See 2 Newberg on Class Actions, Section 11.41 at 11-88 (3rd Ed. 4th Ed. 2001).  In approving class settlements, courts in this Circuit have repeatedly deferred to the judgment of experienced counsel who have conducted the negotiations.  As the Court stated in Cotton: "[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial judge, absent fraud, or

collusion or the like, should be hesitant to substitute its own judgment for that of counsel."  559 F.2d at 1330.

In assessing procedural fairness, the negotiation process must be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves."  Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983).  The Court must ensure that the settlement is the result of "arm's-length negotiations" and that plaintiffs' counsel "possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (quoting Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); Figueroa v. Sharper Image Corp., 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); Stoneridge Inv. Partners LLC v. Charter Communications, Inc., 2005 U.S. Dist. LEXIS 14772, at *18 (E.D. Mo. June 30, 2005)(recognizing a presumption of fairness where "a settlement is negotiated at arm's length by well informed counsel"); New England Health Care Employees Pension Fund, 234 F.R.D. at 632.

Here, the Proposed Settlement was negotiated at arm's length over a two-day period through experienced counsel, with the assistance of two highly skilled, experienced mediators.  The class was represented by Samuel Hill and Henry

Turner, and Pitney Bowes was represented by the law firm of Robins, Kaplan, Miller & Ciresi L.L.P.  Counsel for both parties are experienced, able advocates with extensive experience in class action litigation.  These counsel have no relationship to each other, and have no interest in settling the case "on the quick" rather than proceeding to trial.  Each party selected a mediator, and each of the mediators has extensive experience in both class actions and TCPA matters. Accordingly, the process leading to the pending settlement agreement was fair to both sides, with neither party wielding undue influence over the other. The Settlement Agreement suggests no bias, collusion, or coercion in favor of any party or subgroup of class members.

Further, the negotiations did not even begin until after counsel for both sides had a comprehensive understanding of the case.  The parties conducted substantial discovery, as well as extensive briefings on the dispositive motions.  Thus, at the time the parties entered into the Settlement, counsel for both parties had full command of all factual and legal issues in this case.  The arm's-length nature of the negotiations, the scope of discovery, and the participation of experienced counsel throughout the process provides more than sufficient support for the settlement's fairness.

3.    **Rule 23(c)'s Requirement of Reasonable and Proper Notice Has Been Satisfied.**

The requirement for notice to putative class members of class certification proceedings is threefold, i.e. to "advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment . . . will include all members . . .; and (C) any member . . .  may . . . enter an appearance through counsel."  Fed. R. Civ. P. 23(c)(2).  In addition, notice of a proposed class action settlement "shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e).[6]  "In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  In re Cendent Corp. Securities Litigation, 109 F. Supp.2d 235, 254 (D.N.J. 2000).

To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete

---

[6]    The content and form of such notice is left to the Court's discretion.  See Battle v. Liberty Nat. Life Ins. Co., 770 F. Supp. 1499, 1521 (N.D. Ala. 1991)("It is well established . . . that a district court has great discretion in determining the kind of notice to employ in alerting class members to a proposed settlement and settlement hearing, subject to 'the broad reasonableness standards imposed by due process.'") (quoting Fowler v. Birmingham News Co., 608 F.2d 1055, 1059 (5th Cir. 1979)).

information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard.   In re Cendent Corp. Securities Litigation, 109 F. Supp.2d at 254.

In an effort to guide judges in fashioning appropriate class action notices, the Federal Judicial Center's Manual for Complex Litigation provides the following checklist of recommended settlement notice components:

The notice should announce the proposed settlement and state that, if approved, it will bind all class members.  It should:

- describe the essential terms of the proposed settlement;

- disclose any special benefits provided to the class representatives;

- provide information regarding attorneys' fees . . . ;

- indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to (or, if permitted, for opting out of) the settlement;

- explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; and

- prominently display the address and phone numbers of class counsel and the procedure for making inquiries.

Manual for Complex Litigation, § 30.212 (3d ed. 1995).

On April 24, 2009, this Court approved the Class Notice sent to the members of the Settlement Class.  The detailed Class Notice this Court approved provided substantially more information than required.  For example, it included (a) a description of the Settlement Class; (b) a description of the terms and conditions of the Settlement Agreement; (c) identification of counsel for the Settlement Class and for the defendant; (d) the date and time of the Fairness Hearing; (e) information about and the deadline for filing objections to the Settlement Agreement; (f) information about and the deadline for filing requests for exclusion from the Settlement Class; (g) the consequences of requesting exclusion; (h) the consequences, including compensation parameters, of remaining in the Settlement Class; and (i) a description of the amount of, and Defendants' responsibility for paying, Class Counsel's fees and expenses.  The Class Notice also detailed the final settlement approval process, and notified potential Settlement Class members of their opportunity to be heard at the Fairness Hearing, personally or by counsel, and the process for obtaining additional information.  The Class Notice the Court approved in this case is reasonable and adequate.

## IV.    CONCLUSION.

Here, counsel experienced in TCPA litigation and class action litigation recommend settlement upon terms that have been reached after substantial arm's-

length negotiation under the auspices of two (2) highly qualified and neutral mediators.   There has been no opposition to the Settlement.   The Settlement resolves litigation that was costly and time consuming for both sides, and presents a resolution of the claims of class members that is fundamentally fair, adequate and reasonable.   Accordingly, the parties respectfully request that this Court:  (a) Grant final approval of the Settlement Agreement; (b) Certify the Settlement Class;  (c) Find that the Class Notice constitutes reasonable notice to members of the Settlement Class of their obligation; (d) Find that each member of the Settlement Class, except those who excluded themselves pursuant to Paragraph 20 of the Settlement Agreement, has accepted this Settlement Agreement and is bound by this Settlement Agreement; (e) Approve requests for exclusion as have been timely submitted; (f) Dismiss all claims against Pitney Bowes on the merits and with prejudice and entering final judgment thereon; and (g) Maintain jurisdiction over the implementation of this Settlement Agreement and any dispute, claim, or action arising out of or related to this Settlement Agreement.

Respectfully submitted this 30th day of July, 2009.[7]

*/s/ Samuel M. Hill*
SAMUEL M. HILL, Attorney for Plaintiff,
*pro hac vice*

---

[7]      Counsel hereby certifies that this document has been prepared in Times New Roman font (14 point), in accordance with Local Rule 5.1C.

OF COUNSEL:
Hill Turner, LLC
2117 Magnolia Avenue, Suite 100
Birmingham, Alabama 35205
Phone: (205) 250-7776
Fax: (205) 250-7675
e-mail: sam@hillturner.com

            /s/ Henry A. Turner
            HENRY A. TURNER, Attorney for Plaintiff
            Georgia Bar No.: 719310


OF COUNSEL
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, Georgia 30030
Phone:  (404) 261-7787
Fax: (404) 377-1053
e-mail: haturner@prodigy.net


            **ROBINS, KAPLAN, MILLER & CIRESI**
            **L.L.P.**

            /s/ Meredith H. Ragains

            Lisa L. Heller
            Georgia Bar No. 344109
            Marla R. Butler
            Georgia Bar No. 099917
            Meredith H. Ragains
            Georgia Bar No. 591870
            Jennifer A. Adler
            Georgia Bar No. 585635
            2600 One Atlanta Plaza

950 East Paces Ferry Road NE
Atlanta, Georgia 30326
Telephone:  404-760-4300
Facsimile:  404-233-1267
Email:  llheller@rkmc.com
Email:  mrbutler@rkmc.com
Email:  mhragains@rkmc.com
Email:  jaadler@rkmc.com

**ATTORNEYS FOR DEFENDANT**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARTIN K. O'TOOLE, individually and on behalf of all others similarly situated, | ) ) ) | |
| PLAINTIFFS, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:08-CV-1645-RLV |
| PITNEY BOWES INC., | ) ) | **CLASS ACTION** |
| DEFENDANT. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2009, I electronically filed Memorandum of Law In Support of Joint Motion for Final Approval of Class Action Settlement with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Henry A. Turner
Turner Law Offices, LLC
403 W. Ponce de Leon Avenue
Suite 207
Decatur, GA 30030
haturner@prodigy.net

Samuel M. Hill, Esq.
The Law Offices of Sam Hill, LLC
2117 Magnolia Avenue South
Suite 100
Birmingham, AL  35205
sam@samhilllaw.com

/s/  Meredith H. Ragains
Lisa L. Heller

30273010.1

Georgia Bar No. 344109
Marla R. Butler
Georgia Bar No. 099917
Meredith H. Ragains
Georgia Bar No. 591870
Jennifer A. Adler
Georgia Bar No. 585635

**ATTORNEYS FOR DEFENDANT**

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road NE
Atlanta, Georgia 30326
Telephone:  404-760-4300
Facsimile:  404-233-1267
Email:  llheller@rkmc.com
Email:  mrbutler@rkmc.com
Email:  mhragains@rkmc.com
Email:  jaadler@rkmc.com